792 F.2d 746
 40 Fair Empl.Prac.Cas. 1788,
40 Empl. Prac. Dec. P 36,228
Charlotte P. MOYLAN, Appellant,
v.
MARIES COUNTY; Milfred French, Sheriff, individually and as
Sheriff of Maries County, Appellees.
 No. 84-2052.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 16, 1985.
Decided June 9, 1986.
 
 Jeanne Knowles Townsend, St. Louis, Mo., for appellant.
 Albert Crump, Vienna, Mo., for appellees.
 Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.
 McMILLIAN, Circuit Judge.
 
 
 1
 Charlotte Moylan appeals from a final judgment entered in the District Court for the Eastern District of Missouri in favor of Maries County and Sheriff Milfred French in an action brought under 42 U.S.C. Sec. 2000e et seq. (1982) (Title VII) and 42 U.S.C. Sec. 1983 (1982). The jury returned a verdict in favor of Maries County and Sheriff French on appellant's Sec. 1983 claim. The district court held that appellant failed to establish a Title VII sexual harassment claim because she failed to prove "any requirement of participation in the alleged sexual activities as a condition of her employment." Moylan v. Maries County, No. 82-0417C(3), slip op. at 6 (E.D.Mo. June 26, 1984). For reversal, appellant argues that the district court erred (1) in failing to consider her Title VII claim based on a sexually hostile work environment, (2) in failing to declare a mistrial on the Sec. 1983 claim because of improper and prejudicial opening statements by defense counsel, and (3) in failing to hold Maries County liable under Title VII and Sec. 1983 for the actions of Sheriff French. For the reasons discussed below, we affirm the judgment of the district court on the Sec. 1983 claim and reverse the judgment of the district court on the Title VII claim and remand the Title VII claim for further proceedings consistent with this opinion.
 
 
 2
 Prior to August 1980 the Maries-Osage Ambulance District entered into a contract under the Comprehensive Employment and Training Assistance Act (CETA), which contract authorized the employment of persons by the ambulance district to work as dispatchers. The ambulance district subsequently entered into an agreement with Sheriff French, the elected sheriff of Maries County, Missouri. According to this agreement, three dispatchers were placed in the sheriff's office in the Maries County courthouse where they operated the dispatching equipment. Persons employed in these positions had to meet certain income guidelines. The ambulance district paid the dispatchers and was reimbursed for those wages through the CETA program.
 
 
 3
 In August 1980 appellant applied for employment as a dispatcher. Based on the information in her application, the Division of Employment Security determined that appellant was eligible for the CETA program and authorized her employment in the position of dispatcher. Appellant commenced work on September 5, 1980.
 
 
 4
 Appellant testified that during her employment in the sheriff's office Sheriff French made numerous sexual advances, which were neither solicited by her nor welcomed by her. On October 15, 1980, appellant and Sheriff French engaged in sexual intercourse at the Maries County courthouse. Appellant asserts that she was raped. Appellant testified that she accompanied Sheriff French to a prisoner's cell to provide the prisoner with medication. On the way back to the sheriff's office, Sheriff French "trapped" her on the couch in the office forcing himself on top of her and partially removing her clothes. Appellant testified that she did not scream because there was no one to provide assistance. She begged Sheriff French not to force himself on her. She also asked him to allow her to remove her boots, which she testified was a ploy to give herself time to think. After appellant had removed one boot, Sheriff French again placed himself on top of her and completed the act of intercourse.
 
 
 5
 Appellant did not immediately report the incident. Sometime subsequent to the incident, appellant did consult a Catholic priest. The priest did not recall the date that appellant consulted him; appellant testified that it was the following day. The priest testified that appellant told him about the alleged rape and asked for his advice.
 
 
 6
 On October 26, 1980, approximately ten days after the alleged rape, appellant was working the midnight to noon shift. When Sheriff French entered the office mid-morning, appellant became upset; she subsequently refused to respond to his radio messages after he left the office. She finally did accept a radio call from Sheriff French. In response to Sheriff French's question during this call, she stated that she did not wish to talk with him and would like to leave. She then left the office.
 
 
 7
 On October 28, 1980, before appellant was due to work again, she received a call at home from Sheriff French informing her that she had been terminated from the CETA program because she had failed to report all her income on her application. The Division of Employment Security had informed Sheriff French that appellant did not meet the eligibility criteria for the CETA program because she had failed to report income. On March 11, 1981, appellant pled guilty to a misdemeanor charge of making false statements to obtain benefits under the CETA program. Appellant does not dispute that her discharge was for a proper nondiscriminatory reason.
 
 
 8
 In January 1981 appellant complained to the prosecuting attorney of Maries County, Missouri, that Sheriff French had raped her in October 1980. As a result of the complaint, a special prosecutor was appointed. The special prosecutor later determined that no criminal action should be filed.
 
 
 9
 In March 1981 appellant filed a complaint with the Missouri Commission On Human Rights (Commission) alleging sexual discrimination and constructive discharge. The Commission made a finding of no probable cause because it was undisputed that appellant had falsified her employment application and was ineligible for the CETA position. The Equal Employment Opportunity Commission (EEOC), relying on the Commission's finding, issued a right-to-sue letter on January 19, 1982. On March 10, 1982, appellant filed the present sex discrimination action in forma pauperis in the District Court for the Western District of Missouri. The cause was later transferred to the Eastern District. On December 23, 1982, appellant filed an amended complaint and for the first time named Maries County as a defendant in the lawsuit.
 
 
 10
 Appellant's Sec. 1983 claim was presented to a jury on December 1, 1983. The jury returned a verdict in favor of Sheriff French and Maries County. Thereafter, the district court rendered a judgment in favor of Sheriff French and Maries County on the Title VII claim. This appeal followed.
 
 
 11
 Appellant initially argues that the district court erred in failing to consider and rule on her claim of a Title VII violation based on the existence of a sexually hostile work environment. Appellant argues that the district court erroneously considered only her claim that she had been terminated because of her complaint of sexual harassment. On this latter claim, the district court found that appellant did not establish that submission to sexual harassment was a condition of her employment. Moylan v. Maries County, slip op at 6. The district court further found that appellant did not establish that the reason given for her termination--falsification of income on the employment application--was pretextual. Id. at 7.
 
 
 12
 Appellees argue that appellant raises for the first time on appeal the claim based on a sexually hostile work environment. Appellees argue that appellant's petition, evidence at trial, and verdict-directing instruction concern a discriminatory or retaliatory discharge and do not concern a sexually hostile environment.
 
 
 13
 After a careful review of the record in this case, we hold that appellant's claim of a sexually hostile work environment was before the district court. Appellant's complaint alleged that "Sheriff Milfred French repeatedly came into the dispatcher's office during plaintiff's hours and sexually harassed the plaintiff by attempting to kiss her, put his arms around her, fondle her." Appellant testified to the same during the trial.
 
 
 14
 This court has not previously considered whether an allegation of a sexually hostile work environment states a claim under Title VII. Other courts, however, have so held. In Bundy v. Jackson, 641 F.2d 934, 943-45 (D.C.Cir.1981), the court held that a discriminatory work environment was a violation of Title VII because it constituted sex discrimination with respect to the "terms, conditions or privileges of employment." The court stated that unless Title VII was extended to such actions, an "employer could sexually harass a female employee with impunity by carefully stopping short of firing the employee or taking any other tangible action against her in response to her resistance." Id. at 945; see Katz v. Dole, 709 F.2d 251 (4th Cir.1983); Henson v. City of Dundee, 682 F.2d 897, 902-05 (11th Cir.1982); Robson v. Eva's Super Market, Inc., 538 F.Supp. 857, 860-63 (N.D.Ohio 1982).
 
 
 15
 Those courts which have considered a sexually hostile work environment to be in violation of Title VII have relied heavily on the "Final Guidelines On Sexual Harassment In The Work Place" (Guidelines) issued by the Equal Employment Opportunity Commission. 29 C.F.R. Sec. 1604.11(a), (f) (1981). The Guidelines state: "Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when ... such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." 29 C.F.R. Sec. 1604.11(a) (1981); see Bundy v. Jackson, 641 F.2d at 946. The Eleventh Circuit in Henson v. City of Dundee, 682 F.2d at 903-05, identified five elements of a sexual harassment claim. The plaintiff must allege and prove that (1) she belongs to a protected group, (2) she was subject to unwelcome sexual harassment, (3) the harassment was based on sex, (4) the harassment affected a "term, condition, or privilege" of employment, and (5) the employer knew or should have known of the harassment in question and failed to take proper remedial action. Id. at 903-05.
 
 
 16
 We consider briefly three of the five elements identified by the Eleventh Circuit. The other two, that the plaintiff belongs to a protected group and that the harassment was based on sex, are usually not disputed. Whether the activities complained of were unwelcome is usually disputed, as in the present case. In order to constitute harassment, the conduct must be "unwelcome" in the sense that the employee did not solicit or invite it, and the employee regarded the conduct as undesirable or offensive. Whether the conduct is unwelcome is a fact question.
 
 
 17
 The harassment complained of must affect a term, condition, or privilege of employment. The harassment must be "sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment." Henson v. City of Dundee, 682 F.2d at 904. The plaintiff must show a practice or pattern of harassment against her or him; a single incident or isolated incidents generally will not be sufficient. The plaintiff must generally show that the harassment is sustained and nontrivial. Katz v. Dole, 709 F.2d at 256. "Whether sexual harassment at the work place is sufficiently severe and persistent to affect seriously the psychological well-being of employees is a question to be determined with regard to the totality of the circumstances." Henson v. City of Dundee, 682 F.2d at 904.
 
 
 18
 We hold that a sexually hostile work environment violates Title VII.[1] We therefore remand to the district court for a determination of this claim which appellant raised and which was not considered by the district court. In determining this claim, the district court should consider whether appellant proved that (1) she belongs to a protected group, (2) she was subject to unwelcome sexual harassment, (3) the harassment was based on sex, (4) the harassment affected a "term, condition, and privilege" of employment, and (5) the employer knew or should have known of the harassment in question and failed to take proper remedial action. Henson v. City of Dundee, 682 F.2d at 903-05.
 
 
 19
 The second issue in this case is whether Maries County may be held liable under Title VII and Sec. 1983 for the actions of Sheriff French, an elected public official. Appellant argues that Sheriff French is an employee of Maries County and was supervisor of the dispatchers working in his office. Appellant argues that Sheriff French's conduct occurred within the scope of his employment and thus Maries County is vicariously liable.
 
 
 20
 Maries County argues[2] that there was no proof that Maries County was an employer as defined by Title VII. In addition, Maries County argues that appellant was the employee of the Maries-Osage Ambulance District, and that Sheriff French served as an agent for the ambulance district, not Maries County, in his supervision of appellant.
 
 
 21
 The district court made no specific findings concerning the employment status of appellant or Sheriff French or the relationship between Sheriff French, appellant, the ambulance district, and Maries County. Because the district court found against appellant on the one claim it considered (quid pro quo sexual harassment) and because any liability of Maries County must be based on Sheriff French's actions, the district court probably did not consider it necessary to decide the issues of employment status and relationship between the parties and the ambulance district.
 
 
 22
 Our review of the question whether Maries County may be held liable for the alleged Title VII violations of Sheriff French is impossible without additional factual findings. A threshold question is whether the sheriff's office or Maries County or the sheriff's office and Maries County is an employer as defined by Title VII. This question can only be resolved by defining the status of Sheriff French and the relationship between Maries County and Sheriff French. The second question is whether appellant was an employee of Sheriff French, Maries County, or the ambulance district. We remand to the district court for a determination of these issues.
 
 
 23
 Appellant lastly argues that several statements made by defense counsel during opening statements[3] require the district court to grant a mistrial on the Sec. 1983 claim. Appellant argues that these statements were improper for two reasons. First, they were introduced to excite the prejudice of the jurors because the statements suggested that appellant was promiscuous and sexually aggressive toward the men with whom she worked. Secondly, the statements were made in bad faith because defense counsel was aware that proof of the statements was unavailable.
 
 
 24
 Sheriff French argues that appellant raises these objections for the first time on appeal and consequently they are not preserved for review. He further argues that appellant objected to the opening statements during the trial on the basis that "there is no allegation of this" and "misstatement." The "misstatement" objection was addressed to a comment concerning how the act of intercourse occurred. Lastly, Sheriff French argues that the four specific statements objected to by appellant had some support in the evidence.
 
 
 25
 A party asserting error based on improper argument by counsel must carefully and fully state the contentions at trial. Roy v. Employers Mutual Casualty Co., 368 F.2d 902, 904 (5th Cir.1966). In rare instances, "appellate courts will correct error ... where it appears that a verdict was the result of passion aroused through extreme argument which clearly stirred the resentment and aroused the prejudice of the jury even though no objection was made or exception taken at the time. Sill Corp. v. United States, 343 F.2d 411, 420 (10th Cir.), cert. denied, 382 U.S. 840, 86 S.Ct. 88, 15 L.Ed.2d 81 (1965).
 
 
 26
 During opening statements on November 28, 1983, appellant made no objection to the opening statements as inflammatory or made in bad faith. On December 1, 1983, during the instruction conference, appellant filed a written motion for a mistrial on the basis of the opening statement being "inflammatory, derogatory, scandalous, and of ... a prurient nature." This motion was denied. On appeal, appellant cites no authority in support of the argument that the motion for a mistrial, filed several days after the alleged error occurred and after the presentation of evidence was concluded, preserves the issue for appeal.
 
 
 27
 We hold that appellant has not preserved this issue for appellate review. Appellant did not make a timely objection based on the grounds she now raises on appeal. Nor is this the rare instance where the opening statement is so extreme that the prejudice of the jury was so aroused that we must correct the error in the absence of a timely objection. Sill Corp. v. United States, 343 F.2d at 420. Nonetheless, we suggest that district courts and counsel pay close attention to the objections made by appellant. The second contention--that defense counsel was aware that proof of the statements was unavailable--if true, is more serious than the first.
 
 
 28
 Accordingly, we affirm the judgment of the district court on the Sec. 1983 claim and reverse the judgment of the district court on the Title VII claim and remand the Title VII claim for further proceedings consistent with this opinion.
 
 
 29
 JOHN R. GIBSON, Circuit Judge, concurring.
 
 
 30
 I write separately only to underscore the very narrow scope of the court's holding today.
 
 
 31
 Moylan's claim of a sexually hostile work environment was sufficiently raised in the district court to be preserved for appeal. Although the issue is alleged in the complaint only in the most general terms, the appellant's pretrial filings--including her proposed findings of fact and conclusions of law and her trial brief--set forth the issue with sufficient clarity to reasonably notify the district court that it was an issue on which she relied. The district court did not make findings on this issue.
 
 
 32
 I agree with the court's central holding that a sexually hostile work environment, as properly defined, constitutes a violation of Title VII, 42 U.S.C. Sec. 2000e et seq. (1982). I believe that the reasoning set forth in Bundy v. Jackson, 641 F.2d 934 (D.C.Cir.1981), and Henson v. City of Dundee, 682 F.2d 897 (11th Cir.1982), provides a firm foundation for our decision to recognize this cause of action.
 
 
 33
 The district court's findings that Moylan was discharged for a non-discriminatory reason and that this reason was not pretextual are relevant only to the issue of Moylan's discharge, which she makes plain is no longer an issue. Moylan states in her brief that she seeks only a declaration that she was subjected to sexual harassment and the award of attorneys' fees. She concedes:
 
 
 34
 Because she was discharged from her employment as a dispatcher for reasons independent of the sexual harassment by Sheriff French, and because she is not disputing the validity of her discharge, Ms. Moylan is entitled to neither backpay nor reinstatement. In addition, injunctive relief is unnecessary in this case, * * *.
 
 
 35
 Brief of Appellant, at 16.
 
 
 36
 Thus, only very limited issues remain for the district court on remand. Considering the findings of the district court with respect to Moylan's credibility, and the narrow scope of the questions which remain, I would simply remand to the district court to make findings of fact and conclusions of law on these limited issues on the record before it. The district court should take additional testimony only if it considers it necessary. Only if it finds in favor of Moylan would it be necessary to consider the liability of Maries County.
 
 
 
 [1]
 "Sexual harassment which creates a hostile or offensive environment for members of one sex is every bit the arbitrary barrier to sexual equality at the workplace that racial harassment is to racial equality." Henson v. City of Dundee, 682 F.2d 897, 902 (11th Cir.1982). "[A] requirement that a man or woman run a gauntlet of sexual abuse in return for the privilege of being allowed to work and make a living can be as demeaning and disconcerting as the harshest of racial epithets." Id. Numerous cases have found Title VII violations where an " 'employer created or condoned a substantially [racially] discriminatory work environment, regardless of whether the complaining employees lost any tangible job benefits.' " Id. (citations omitted); see, e.g., Firefighters Institute for Racial Equality v. City of St. Louis, 549 F.2d 506, 514-15 (8th Cir.), cert. denied, 434 U.S. 819, 98 S.Ct. 60, 54 L.Ed.2d 76 (1977)
 
 
 [2]
 Maries County also argues that appellant did not name Maries County in her charge before the Missouri Commission on Human Rights or the EEOC and did not timely file suit against Maries County. Maries County did not file a cross-appeal asserting these issues; thus, we do not consider them
 
 
 [3]
 Appellant cites the following as examples of improper statements made by defense counsel:
 
 
 [1]
 "She had a gun. She carried a gun even though she didn't have the authority or said she did."
 
 
 [2]
 "The evidence will be that occasionally some of the deputies or sheriff would come in or she would call them in to talk to them and that she started flirting with the men. French wasn't the only one that she hugged and kissed."
 
 
 [3]
 "The evidence will be that there wasn't any rape, absolutely no rape to it. She took her own boots off. She took her own pants off, exposed herself onto the couch. He took his pants down and got on her. She wrapped her legs around him."
 
 
 [4]
 "Mr. Beeler, the prosecuting attorney, will come down here and tell you he talked to her, talked to Charlotte. She told him she said, 'yeah, I took my boots off, took my pants down.' What does that tell you? You folks use your own common knowledge."