Donya THOMPSON, Plaintiff,

v.

**ARKANSAS TRANSPORTATION DEPARTMENT, et al.,**
Defendants.

No. LR–C–87–51.

United States District Court,
E.D. Arkansas, W.D.

June 7, 1988.

Ralph Washington, John W. Walker & Assocs., Little Rock, Ark., for plaintiff.

J. Denhammclendon and Jerome Kearney, Asst. Attys. Gen., of Arkansas, Little Rock, Ark., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HENRY WOODS, District Judge.

FINDINGS OF FACT

1. Plaintiff Donya Thompson was an "employee" of defendant Arkansas Department of Transportation (hereinafter ADT), and ADT is an "employer" as those terms

are defined in Title VII of the Civil Rights Acts of 1964 as amended.

■ 2. Plaintiff is a female citizen of the United States who resides in Pulaski County, Arkansas. She was employed by ATD on or about October 1, 1977 up until January 6, 1986, at which time she was terminated. She worked in the capacity of Enforcement Officer of ADT. She was the first female Enforcement Officer employed by ADT, and at the time of her discharge was the only female out of 23 enforcement officers.

3. The defendants are individual members of the ADT who are sued in their official capacities. At the time plaintiff was discharged, the members of the Commission were Nelson Ladd, Chairman, and Bob Hoffman and John Allen.

4. The Arkansas Transportation Department is administered by the Transportation Commission which consists of three persons appointed by the Governor. It deals with the safety rules covering the condition of tractor trailor rigs and the qualifications of their drivers.

5. Prior to the appointment of Nelson Ladd as Chairman of the Commission, Ms. Jean Furr was administrator of the Commission and was the overall supervisor of the enforcement officers. Their chief was William Beeson who had served in this capacity for 27 years until his retirement on April 12, 1985. Mr. Beeson's exact title was Director of Enforcement. (Beeson Dep., p. 5).

6. Mr. Beeson hired the plaintiff in 1977 on the recommendation of the then Chairman of the Commission, Robert Moore. (Beeson Dept, pp. 13–15). Plaintiff worked directly under Mr. Beeson until his retirement. She was promoted to corporal on July 1, 1983. (PX 7).

7. Beeson, now deceased but whose evidentiary deposition was introduced by plaintiff, had a high opinion of her. Even though he generally did not like the idea of having women in law enforcement, he regarded plaintiff as an exception. (Beeson Dep., pp. 19–21). He testified that "she did me just as good a job as any man had. . . .

I couldn't hardly read their reports. And hers were a picture, hers were very concise, very brief and to the point. She'd write her reports to where somebody that didn't know anything about our work could tell what happened." (Beeson Dep., p. 48).

8. Mr. Beeson's opinion of plaintiff and her work was corroborated by abundant and credible testimony. I find that plaintiff was an excellent employee who performed her work in a very efficient manner. This was the virtually unanimous opinion of her co-workers in the agency and other law enforcement officers with whom she worked. There was very little testimony to the contrary, and I do not credit it.

9. Plaintiff's troubles began when Nelson Ladd became Chairman of the Commission and when he later named his brother-in-law, Robert Black, as Director of the Enforcement Division to succeed Mr. Beeson. Black had worked under Beeson. The latter did not think highly of Black's job performance but did not complain because of Ladd's position. (Beeson Dep., pp. 25–26).

10. As the only woman in the enforcement division, plaintiff became the focus of Chairman Ladd's anti-female bias. According to Ms. Furr, the former administrator, such bias was virulent. I credit her testimony, particularly in view of the unjustified actions taken by Ladd against plaintiff. Mrs. Furr, who has now retired, testified that Ladd told her not to recruit any more females as enforcement officers. Ladd was not there when she was hired and resented her presence in the enforcement division. She further testified that he told her not to hire any blacks and not to hire any unattractive females for positions in the office.

11. Ms. Furr testified that when Black was appointed as Director of Enforcement she was completely shorn of her responsibilities over the enforcement division. All supervision was assumed by Ladd and his brother-in-law Black. It may be of some significance that there was unrebutted testimony that Ladd owns two trucking companies.

12. It is obvious from the testimony and I find that Ladd began a vendetta against plaintiff in an attempt to find a justification for terminating her. To accomplish this purpose, he called in his brother-in-law and the Assistant Director, Donnie Hodges, and assigned the latter a roving commission to investigate plaintiff. I find that the "investigation" of plaintiff was nothing more than a smoke screen to discharge her. There was no basis for singling out plaintiff for investigation since male employees were shown by the evidence to have been guilty of much more serious violations and had received either light disciplinary action or none at all.

13. The "investigation" in this case can only be described as a farce. Without notice and without plaintiff's presence, a "hearing" was held in which the investigator Hodges recited his findings. Present besides the Commission were the Commerce attorney, administrative personnel and several supervisory personnel. After hearing the testimony at trial, I am convinced that if plaintiff had been present, she could have answered most, if not all, the allegations of improper conduct on her part. At the trial she introduced evidence that most of the allegations made against her were either false or inaccurate and her testimony in many instances was substantiated by documentary proof. (See PXs 40–50).

14. The written reasons given plaintiff at the time of her discharge were as follows:

Failure to timely file proper documentation on sick leave, vacation and compensatory time.

Failure to maintain work schedule and failure to report absentees.

Work habits and attitude not suitable for an enforcement officer of the A.T.C. (PX 10).

15. In many instances where it was contended that she had failed to submit leave slips, she produced copies of the slips. She satisfactorily explained her absence and produced leave slips to back them up. Her attendance record was good.

16. Where it was claimed that she was supposed to have logged in on the State Police radio, she demonstrated that she was on leave, at a commission school or was in court. The operator testified that sometimes they failed to log the calls. There were as many or more discrepancies for male employees.

17. The allegations that she claimed expense for meals when she was not working proved to be unfounded. On these occasions plaintiff was working or had a satisfactory explanation for the expense claim.

18. The investigation report (DX 4) on which the Commission based its decision to discharge plaintiff is replete with inaccuracies and falsities to such an extent that it must be totally disregarded. In addition to the matters contained in Finding 14, *supra,* there were some complaints to which any law enforcement is subject. At the request of the Sherwood Police Department, she warned a trucker about parking without permission on a private lot. To do so she went on private property in alleged violation of policy. There were other complaints about similar minor incidents which I view to be of no significance.

19. While blind and uncritical acceptance of the findings of the investigator might have justified a vote to discharge plaintiff, no fair-minded official would have voted to discharge the plaintiff if the true facts had been known.

20. Testimony at the trial conclusively demonstrated that if plaintiff had been given a pre-termination hearing with an opportunity to explain the charges, there would have been no basis for any disciplinary action against her.

21. On the only other occasion when Mr. Hodges investigated a male employee (for theft), that individual was given a hearing before he was terminated.

22. Male Enforcement Officers Frank Stone and Alfred Smith were guilty of more severe infractions than those alleged against plaintiff but not proved, yet they were only demoted and not discharged.

23. The above findings show conclusively that plaintiff suffered grossly unfair treatment at the hands of the Commission.

24. I find that the reason for this unwarranted treatment was the prejudice of Nelson Ladd with regard to the presence of a female employee in the enforcement division. As a result of this animus, Ladd instigated an investigation resulting in findings of misconduct on plaintiff's part which are demonstrably inaccurate and unworthy of belief.

25. At the time of plaintiff's discharge, the agency had no written rules and regulations. Male employees were disciplined on an entirely different basis from that of plaintiff. Several of them had much poorer performance records and were guilty of much more severe misconduct than plaintiff. The males received slaps on the wrist; the females received the ultimate penalty.

26. I find that Nelson Ladd was the moving force in instigating this so-called "investigation" and the conduct of this so-called "hearing." By acquiesing in Ladd's actions, the other Commissioners, Bob Hoffman and John Allen, are equally responsible.

27. I am unable to decide whether the charges made against plaintiff were fabricated or simply the result of a sloppy and incompetent investigation. I realize that the former finding is serious, and I am reluctant to specifically make such a finding. I have no hesitancy in finding that the "investigation," the manner in which it was conducted, the "hearing," and the interpretation put on the "findings" were the result of sex discrimination toward plaintiff by defendants.

28. The animus of Commissioner Ladd is shown by testimony that he was enraged when he learned that after plaintiff's discharge, Robert Black gave plaintiff a written recommendation for employment with the Sherwood Police Department. In this document Black described plaintiff as well-adjusted, honest, loyal and trustworthy. He said she had demonstrated high ethics and morals and recommended her for a position as a police officer. Donnie Hodges testified that Ladd had sent him to retrieve this document from the Sherwood Police Department. I can only assume that Robert Black sent this document to atone in some measure for his part in this episode. I find that in this document he made a fair and honest evaluation of the plaintiff and her work.

CONCLUSIONS OF LAW

1. The court has jurisdiction of this cause.

2. The defendant was guilty of sexual discrimination against plaintiff. *Coble v. Hot Springs School District No. 6,* 682 F.2d 721 (8th Cir.1982).

3. The plaintiff made out a prima facie case. She was the only female Enforcement Officer in the Arkansas Transportation Department. She was discharged and her position was filled by a male. In fact, seven males were hired as enforcement officers after plaintiff was terminated. (PX 7). *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

4. The defendants have advanced reasons for discharging plaintiff, but these reasons are pretexts. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

5. Defendant's discriminatory sexual conduct "had the purpose or effect of unreasonably interfering with ... work performance or creating an intimidating, hostile, or offensive working environment." *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986).

6. Plaintiff has demonstrated that "(1) she belongs to a protected group, (2) she was subject to unwelcome sexual harassment, (3) the harassment was based on sex, (4) the harassment affected a 'term, condition, or privilege' of employment, and (5) the employer knew or should have known of the harassment in question and failed to take proper remedial action." *Moylan v. Maries County,* 792 F.2d 746, 750 (8th Cir. 1986).

7. Judgment will be entered for the plaintiff for all past wage loss. The Arkansas Transportation Department will be

ordered to immediately return plaintiff to her former position with all intervening grade and pay raises.