Victor QUIÑONES Plaintiff

v.

PUERTO RICO HOSPITAL SUPPLY, INC. Defendant

No. CIV. 02–1243(SEC).

United States District Court, D. Puerto Rico.

March 4, 2004.

---

Bamily Lopez–Ortiz, Lopez Toro, Law and Notary Offices, Hato Rey, PR, for Victor Quinones, Plaintiff.

Graciela J. Belaval–Bruno, Martinez Odell & Calabria, San Juan, PR, for Puerto Rico Hospital Supply, Inc., Defendant.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court is Defendant's motion for summary judgment (Docket # 29). Plaintiff duly opposed said motion (Docket # 39) and Defendant replied (Docket # 43). After carefully considering the parties' arguments as well as the applicable law, Defendant's motion for summary judgment will be **GRANTED in part and DENIED in part.**

### Factual and Procedural Background

Plaintiff, male, filed the present complaint seeking compensatory and punitive damages for the alleged sexual harassment he endured during the five months he worked for Defendant. Specifically, Plaintiff avers four causes of action: 1) sexual harassment for which Defendant is vicariously and individually liable under Title VII of the Civil Rights Act of 1964, 42 U.S.C.2000e 2) failure to publicize among its employees a sexual harassment policy and the inappropriateness of its procedures, if any in contravention of Title VII; 3) retaliation for the exercise of protected conduct in violation of Title VII; and 4) violation of various Commonwealth laws which prohibit discrimination and sexual harassment in the employment context.

### Standard of Review

Fed.R.Civ.P. 56(b) provides that: "A party against whom a claim . . . is asserted . . . may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(c); *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986); *NASCO, Inc. v. Public Storage, Inc.,* 29 F.3d 28 (1st Cir.1994). "The principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists." 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2725, p. 401.

In this regard, the First Circuit Court of Appeals has noted that for a dispute to be "genuine," there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the nonmoving party. *U.S. v. One Parcel of Real Property,* 960 F.2d 200, 204 (1st Cir.1992); *see also Boston Athletic Assn. v. Sullivan,* 867 F.2d 22, 24 (1st Cir.1989); *Medina Muñoz v. R.J. Reynolds Tobacco,* 896 F.2d 5, 8 (1st Cir.1990) ("[a] 'genuine' issue is one that must be decided at trial because the evidence, viewed in the light most favorable to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party.") (citations omitted).

By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Government Development Bank of Puerto Rico,* 27 F.3d 746, 748 (1st Cir. 1994). "A fact is material if it tends to resolve any of the issues that have been properly raised by the parties." Wright, Miller & Kane, *supra,* § 2725 at p. 419. "Not every genuine factual conflict necessitates a trial. It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." *Martínez v. Colón,* 54 F.3d 980, 983–984 (1st Cir. 1995).

In addition, when determining whether to grant summary judgment, the Court may not weigh the evidence. *Casas Office Machines, Inc. v. Mita Copystar America,* *Inc.,* 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, not room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (*citing Greenburg v. Puerto Rico Maritime Shipping Authority,* 835 F.2d 932, 936 (1st Cir.1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machines,* 42 F.3d at 684.

While the moving party has the burden of initially establishing that there is "an absence of evidence to support the non-moving party's case", *Maldonado–Denis v. Castillo–Rodríguez,* 23 F.3d 576, 581 (1st Cir.1994); the nonmovant has a "corresponding obligation to offer the court more than steamy rhetoric and bare conclusions." *Lawton v. State Mutual Life Assurance Company of America,* 101 F.3d 218, 223 (1st Cir.1996). Furthermore, "the nonmovant must produce specific facts, in suitable evidentiary form' sufficient to limn a trialworthy issue .... Failure to do so allows the summary judgment engine to operate at full throttle." *Id.; see also Kelly v. United States,* 924 F.2d 355, 358 (1st Cir.1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); *Medina–Muñoz,* 896 F.2d at 8, (*quoting Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir. 1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.")

Then applicable Local Rule 311(12) (now codified as Local Rule 56(b)), moreover, requires the moving party to "file annexed

to the motion a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried . . . ." Unless the non-moving party controverts this statement, all the material facts set forth therein "shall be deemed to be admitted." *Id.* This is the so-called "anti-ferret rule." *See, e.g., Orbi, S.A. v. Calvesbert & Brown,* 20 F.Supp.2d 289, 291 (D.P.R.1998). While failure to comply with this rule does not automatically warrant the granting of summary judgment, "it launches the non-movant's case down the road toward an early dismissal." *Tavárez v. Champion Products, Inc.,* 903 F.Supp. 268, 270 (D.P.R.1995).

**Applicable Law and Analysis**

In its motion for summary judgment, Defendant contends that the genuine material facts, undisputed for purposes of this motion, do not amount to *quid pro quo* sexual harassment or hostile environment under Title VII, or their Puerto Rico counterparts. Rather, Defendant avers that they establish that Plaintiff was terminated for cause since, in the short period he worked for Defendant, he failed to follow instructions and perform his duties as expected. In addition, Defendant alleges that Plaintiff was rude to coworkers, insolent and insubordinate towards supervisors. Moreover, Defendant asserts that Plaintiff's allegation of sexual discrimination is frivolous and that there is not even a scintilla of evidence to support it. We will analyze each of Plaintiff's causes of actions in turn.

1) Sex discrimination

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–2(a)(1), prohibits any employer from engaging in unlawful employment practices based upon a person's race, color, religion, sex or national origin. *Provencher v. CVS Pharmacy, Div. of Melville Corp.,* 145 F.3d 5, 13 (1st Cir.1998). A hostile or abusive work environment may create a situation of discrimination based on sex, actionable under Title VII. In fact, the Equal Employment Opportunity Commission's Guidelines on Discrimination Because of Sex specify that sexual harassment is a form of sex discrimination prohibited by Title VII. 29 C.F.R. § 1604.11(a) (1985).

 Absent the existence of direct evidence of intentional discrimination, a typical Title VII plaintiff alleging disparate treatment must employ the familiar burden-shifting framework enunciated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Mulero–Rodriguez v. Ponte, Inc.,* 98 F.3d 670, 673 (1st Cir.1996). Under *McDonnell Douglas,* the plaintiff bears the initial burden of establishing a prima facie case of Title VII discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. The specifications of the prima facie case vary depending on the nature of the discrimination claim. *Id.* at n. 13. However, after the U.S. Supreme Court's ruling in *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), a complaint is an employment discrimination lawsuit need not set out the elements of a prima facie case as spelled out in *McDonnell Douglas.*

In *Meritor v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), while addressing the issue of sexual harassment in employment, the Supreme Court established several important rules, which are embodied in Law 17 of Puerto Rico. Sexual harassment can take place in two related ways: *quid pro quo* harassment or hostile environment harassment.

 Claims based on carried-out threats are often referred to as quid pro quo cases. The quid pro quo harassment occurs when a supervisor conditions job benefits upon the receipt of sexual favors

from a subordinate, or punishes that subordinate for his/her refusal to comply with the sexual request(s). Quid pro quo sexual harassment requires, among other things, that plaintiff's refusal to submit to unwelcome sexual advances or requests for sexual favors result in tangible job detriment. *See Ellett v. Big Red Keno, Inc.,* 2000 WL 1006743, 2000 U.S.App. Lexis 17583 (8th Cir.2000). Therefore, a plaintiff must produce evidence showing that the alleged harassment affected tangible aspects of their employment. For example, under Title VII, quid pro quo sexual harassment can be shown where a supervisor uses employer processes to punish a subordinate for refusing to comply with sexual demands. *Wills v. Brown Univ.,* 184 F.3d 20, 25 (1st Cir.1999); *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 897 (1st Cir.1988). However, "a supervisor's mere threat or promise of job-related harm or benefits in exchange for sexual favors does not constitute *quid pro quo* harassment. ..." *Gary v. Long,* 59 F.3d 1391, 1396 (D.C.Cir.1995). *See also Carrero v. New York City Housing Auth.,* 890 F.2d 569, 579 (2nd Cir.1989) (noting that the gravamen of a quid pro quo claim is a tangible job benefit or privilege conditioned on an employee's submission to sexual blackmail and that adverse consequences follow the employee's refusal); and *Highlander v. K.F.C. Nat'l Mgmt.,* 805 F.2d 644, 649 (6th.Cir.1986) (where the court established that there is no cause of action for quid pro quo sexual harassment where the record is totally devoid of any evidence tending to demonstrate that plaintiff was denied a job benefit or suffered a job detriment as a result of her failure to engage in the activity suggested by defendant).

■ Therefore, in order for Plaintiff to prevail pursuant to the doctrine of *quid pro quo* sexual harassment, he must prove: 1) that he was a member of a protected class; 2) that he was subject to unwelcome

sexual harassment in the form of sexual advances or requests for sexual favors; 3) that the harassment complained of was based on sex; 4) that submission to the unwelcome advances was an express or implied condition for receiving job benefits, or that refusal to submit to a supervisor's sexual demands resulted in a tangible job detriment; and 5) the existence of respondeat superior liability. *Oncale v. Sundowner Offshore Services. Inc.,* 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998); *Harris v. Forklift Systems. Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Meritor,* 477 U.S. at 64, 106 S.Ct. 2399; *Chamberlin v. 101 Realty, Inc.,* 915 F.2d 777, 785 (1st Cir.1990); *Ruiz v. Caribbean,* 54 F.Supp.2d 97, 105 (D.P.R.1999).

■ In order to succeed under the rubric of hostile environment, Plaintiff must show that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris,* 510 U.S. at 21, 114 S.Ct. 367 (citations omitted). The Supreme Court has outlined the elements a plaintiff must meet in order to succeed in a hostile work environment claim: (1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established. *See Faragher v. Boca Raton,* 524

U.S. 775, 787–89, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Harris,* 510 U.S. at 20–23, 114 S.Ct. 367; *Meritor,* 477 U.S. at 65–73, 106 S.Ct. 2399.

As the Supreme Court stated in *Burlington,* to the extent that the terms quid pro and hostile environment "illustrate the distinction between cases involving a carried-out threat and offensive conduct in general, they are relevant when there is a threshold question whether a plaintiff can prove discrimination." *Burlington Indus. v. Ellerth,* 524 U.S. 742, 745, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

■ Although in his complaint Plaintiff alleges both *quid pro quo* and hostile environment, in his opposition to Defendant's motion for summary judgment he limits his sex discrimination claim under Title VII to hostile work environment. Faced with a motion for summary judgment, it was Plaintiff's burden to establish that there existed evidence creating a trial-worthy *quid pro quo* claim. *Hernández–Loring v. Universidad Metropolitana,* 233 F.3d 49, 53 (1st Cir.2000). Since he has failed to do this, Plaintiff's *quid pro quo* claim will be **DISMISSED WITH PREJUDICE.**

■■ We now turn to analyze Plaintiff's sex discrimination claim under the rubric of hostile environment. We agree with Defendant that the facts, even seen in the light most favorable to Plaintiff, fail to establish that his supervisor, Ms. López, created a hostile work environment. As stressed by the Supreme Court, "offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher,* 524 U.S. at 788, 118 S.Ct. 2275. Moreover, Title VII does not proscribe conduct "merely tinged with offensive sexual connotations." *Oncale,* 523 U.S. at 81, 118 S.Ct. 998. Consequently, courts must "filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" *Faragher,* 524 U.S. at 788, 118 S.Ct. 2275 (internal citation omitted). The Supreme Court, as well as several Courts of Appeal, has made it clear that the conduct must be extreme to amount to a change in the terms and conditions of employment. *Faragher,* 524 U.S. at 787, 118 S.Ct. 2275. *See also, Carrero v. New York City Housing Auth.,* 890 F.2d 569, 577–578 (2nd Cir. 1989); *Moylan v. Maries County,* 792 F.2d 746, 749–750 (8th Cir.1986).

■ Plaintiff's allegations pertaining to the unwelcome harassment are limited to the following:

11. Quiñones was retained on July 10, 2000 by PRHS as Chief Accountant. His immediate supervisor was López.

12. Quiñones was the only male employee at the Finance Department (9 women, 1 man).

13. Immediately upon recruitment, specifically, the next day of commencing employment. López approached Quiñones and established the tone of the intended work environment: sexual innuendoes, proposals and advances.

14. On July 11, 2000 López inquired Quiñones if he had seen the e-mail sent to him by De la Torre. Quiñones replied that he had not. López leaned over Quiñones and in his computer located the e-mail and opened it. The e-mail read as follows:

"Victor, with this I give you the official welcome to PRHS. To Maria, for her enjoyment and to the boss in c.c. to always keep him informed of everything that happens at Finance" (our translation, Spanish original is the following: "Victor. con esto te doy labienvenida oficial a PRHS. A María para que se lo goce y al jefe en c.c. para siempre man-

tenerlo informado de todo lo que sucede en Finanzas").

(...)

One night, as a couple lay down for bed, the husband gently tapped his wife on the shoulder and started rubbing her arm. His wife turned over and said "I'm sorry honey, I've got a gynecologist appointment tomorrow and I want to stay fresh." Her husband, rejected, turned over and tried to sleep. A few minutes later, he rolled back over and tapped his wife again. This time he whispered in her ear. "Do you have a dentist appointment tomorrow too?"

15. López asked plaintiff what he thought about the message and the plaintiff responded that he considered it a subliminal message. López made no comment whatsoever denying plaintiff's understanding of the e-mail.

16. From then on whenever plaintiff approached López in the course of his labor responsibilities, López changed the subject and geared it towards a personal matter. Plaintiff listened patiently at López and vaguely commented on the personal matters brought forth.

17. In the course of one of these diverted conversations López told the plaintiff that her son was in need of a father figure, that she would give anything to have a "good man" next to her, that she liked to play "hard to get" and preferred to have her men "begging at her feet".

21. From then on, López intensified her personal bombardment upon plaintiff. De la Torre started to invite the plaintiff to "lunches" with López. During these lunches De la Torre used any excuse to leave López and the plaintiff alone. Moreover, during these lunches De la Torre and López engaged in sexually charged conversations in plaintiff's presence.

22. Once it came to be known that the plaintiff had lived in New York. De la Torre and López invited the plaintiff to go with them to New York, "at least for a weekend", that they would pay everything, so that he could show them the city.

23. In another occasion, the plaintiff commented that his sister lived in Colorado. This prompted López and De la Torre's immediate invitation to a ski trip to Colorado.

24. One time, De Ia Tone's boyfriend, Francisco Javier, and his fellow co-worker, Paul Díaz, were invited to one of these lunches. Once finished, De la Torre left with her boyfriend and gave the keys of her car to López. The plaintiff "refused to return to the office with López and instead left with Paul Diaz".

25. After some time, the plaintiff decided that he was not going to participate anymore in these "lunches" and declined all further invitations. He excused himself stating that he preferred to go home to have lunch in order to save money. This happened during the latter part of September, 2000.

26. Then López received new furniture for her office that was specially designed to accommodate her computer. The plaintiff helped López organize her office equipment with the new furniture. In one of the sections of López's I desk there was a small hole designed to let the computer cables through. When the plaintiff tried to pass the computer's cable through the hole it would not go through because it was larger that the opening. This prompted the plaintiff to comment that he had to find another place were to pass the cable because it did not fit the opening. López responded that "she had a very small hole". The

statement was made in such manner that its intended double meaning was readily understood. De la Torre was present at this incident.

27. It come to be known that The plaintiff had knowledge about electricity, plumbing, carpentry and other manual abilities. Towards the end of September 2000 De la Torre asked the plaintiff to help her with her "Cable–TV". Plaintiff complied with the request.

28. From then on, De la Torre requested plaintiff's assistance for various "tasks". Eventually, De la Torre invited the plaintiff to go out and he accepted.

46. Then De la Torre told the plaintiff that they could not "go out" anymore.

Although Plaintiff did "go out" with De la Torre, the Finance Director, both of Plaintiff's internal and EEOC complaints of sexual harassment are against Ms. López, not De la Torre. In addition, Plaintiff's allegations regarding lunch conversations are wholly inapposite. Plaintiff chose to go to lunch with his supervisors. This is evidenced by the fact that later on he stopped going. In reviewing the entire record, we find no genuine issue of material fact suggesting Defendant's employees created a hostile work environment. Although Plaintiff may have found his workplace unpleasant at times, we find that the indignities he suffered were episodic and ambiguous and thus not sufficiently severe or pervasive to alter the conditions of his employment. *See Penry v. Federal Home Loan Bank,* 155 F.3d 1257, 1260–63 (10th Cir.1998) (affirming a grant of summary judgment on hostile environment claims where the plaintiffs' supervisor (a) asked if women have "wet dreams," (b) complimented one plaintiff on her exposed bra strap, (c) made a double entendre concerning a female assistant's "drawers," (d) asked one plaintiff what she was wearing under her dress, and (e) took one plaintiff to dine at Hooters). Thus, Plaintiff's hostile environment claim will be **DISMISSED WITH PREJUDICE**.

2) Sexual Harassment Policy

██ Regarding Defendant's sexual harassment policy, Plaintiff alleges the following:

60. PRHS's failure to publicize among its employees a sexual harassment policy and the inappropriateness of the established procedures, if any exist, evidence a greater concern with avoiding liability than with solving a real and foreseeable illegal situation and constitute a reckless disregard to Title VII of the Civil Rights Act's pertinent provisions, as amended, 42 U.S.C.A.2000e.

61. Punitive damage should be awarded against defendant for its reckless disregard of Quiñones' civil rights and egregious omission of compliance with the applicable Civil Rights Act's and Puerto Rico and the United States constitutions.

(Docket # 1).

In its motion, Defendant asserts that Plaintiff received a copy of Defendant's sexual harassment policy on July 10, 2002, a date prior to the commencement of his employment with Defendant (Docket # 29 -Exhibit # 59). Defendant also submitted a copy of said policy (Docket # 29—Exhibit # 58). However, the exhibit is in the Spanish language. As of this date, we have not received a certified translation. Accordingly, we cannot determine whether the policy established appropriate procedures, if any, and whether these procedures were followed.[1] Accord-

---

1. It is well-settled that any document filed with this Court in a language other than English shall be accompanied by certified translation. D.P.R. Local Rule. 5.1(d); *see also González–Morales v. Hernández Arencibia,* 221 F.3d 45, 50 n. 4 (1st Cir.2000) (finding that

ingly, Defendant's motion for summary judgment on this claim will be **HELD IN ABEYANCE** for a period of **thirty (30) days** pending filing of a certified translation.

3) Retaliation

▅▅ Plaintiff has brought suit against Defendant alleging that he was discriminated against when he was terminated from his employment, in violation of Title VII. Defendant has moved for the entry of summary judgment, arguing that Plaintiff has failed to exhaust the appropriate administrative remedies. We disagree and find that Plaintiff's retaliation claim is preserved.

Plaintiff was terminated from employment on December 6, 2000 (Docket # 1–¶ 51). Subsequently, Plaintiff filed a charge with the EEOC on December 12, 200 and received his right-to-sue letter (Docket # 1–¶ 4). Although in his EEOC charge he lists December 6, 2000 as the date of most recent discrimination, he does not specify that he was discharged on that date or allege retaliatory discharge (Docket # 29—Exhibit 72).

The First Circuit recently reconsidered its position regarding retaliation claims not included in EEOC charges and espoused the following rule: **"retaliation claims are preserved so long as the retaliation is reasonably related to and grows out of the discrimination complained of to the agency—e.g., the retaliation is for filing the agency complaint itself."** *Clockedile v. New Hampshire Department of Corrections,* 245 F.3d 1, 6 (1st Cir.2001). Although Plaintiff's retaliation claim technically does not "grow out of" the discrimination complained in the EEOC charge, it is "reasonably related." Plaintiff was discharged after he internally complained of sexual harassment.

Furthermore, with regards to notice to the Defendant, the First Circuit stated that "[i]f the retaliation is official, there is no need to worry about notice: the employer should already know. and, as between the employer and the employee, the former is in a better position to appreciate the rules about what legitimate legal claims may exist and be preserved." *Id.* at 5–6. We refuse to mousetrap Plaintiff, who filed the EEOC complaint pro se. Accordingly, we find that his retaliation claim survives his failure to present it in his EEOC charge or to amend that charge. However, we must still examine whether Plaintiff's retaliation claim survives summary judgment.

▅▅ Under the burden-shifting structure set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, at 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to establish a *prima facie* showing of reprisal, Plaintiff must allege and prove that:

1) he engaged in a protected activity;

appellants had waived arguments premised on documents for which they had not provided translations). It is clear, to the point of perfect transparency, that federal court proceedings must be conducted in English. Even if this practice were not intuitively obvious in Puerto Rico, Congress enacted section 42 of the Jones Act, which requires that "[a]ll pleadings and proceedings in the United States District Court for the District of Puerto Rico...be conducted in the English language." 48 U.S.C. 864 ("Jones Act" or "English language requirement") (emphasis added); *see also United States v. Dejesus Boria,* 518 F.2d 368, 370–71 (1st Cir.1975) (upholding the constitutionality of the English language requirement). This requirement is significant not only because it guarantees that the District of Puerto Rico remains "a viable part of the federal judicial system," *United States v. Valentine,* 288 F.Supp. 957, 964 (D.P.R.1968), but also because it allows this Court to review evidence in the same language in which it was presented to the district court. *See United States v. Rivera–Rosario,* 300 F.3d 1(1st Cir.2002).

2) an adverse employment action occurred; and

3) a causal link existed between the protected activity and the adverse employment action.

*Long v. Eastfield College,* 88 F.3d 300, 304 (5th Cir.1996).

Although Defendant challenges Plaintiff's good faith regarding his internal complaint, Defendant, for the purposes of argument, assumed that Plaintiff has made a *prima facie* showing (Docket # 29—p. 37). Nonetheless, Defendant asserts that it has a legitimate, non-retaliatory reason for its employment decision—Plaintiff's poor performance and his failure to follow instructions—and that Plaintiff has not proven pretext nor that it is not the true reason. Defendant specifically contends that on Monday December 4, 2000 Plaintiff was asked to work at Customed in Fajardo on Tuesdays and Thursdays commencing the next day (Docket # 29—Exhibit 60). However, Plaintiff failed to report at Customed on Tuesday December 5, 2000.

▐▐▐ Plaintiff admits that he could not get to Customed on that first Tuesday because his car broke down and instead went to defendant's office in Carolina to inform De la Torre about the situation (Docket # 1, ¶ 50). Defendant then asserts that after Plaintiff also failed to report to Customed on December 6, 2000 and was seen at the Carolina office "devoting work time try to obtain electronic information from the computer of other employees," he was terminated (Docket # 29—¶ 95—Exhibit # 71). However, as Plaintiff correctly controverts, if Plaintiff's assignment to Customed was for Tuesdays and Thursdays, he was not required to go to Customed on Wednesday December 6, 2000. Therefore, his failure to go to Carolina that day could not have been the "true reason" for which he was fired. Additionally, had Plaintiff reported to Customed on Wednesday, a day he was

supposed to be at Defendant's office in Carolina, he could have been reprimanded for failing to show up to work. When an employer gives an inconsistent explanation to an adverse employment action, "a jury may infer that the articulated reason [is] pretextual." *Dominguez–Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 432 (1st Cir. 2000) (*citing Castleman v. Acme Boot Co.,* 959 F.2d 1417, 1422 (7th Cir.1992)("[a] jury's conclusion that an employer's reasons were pretextual can be supported by inconsistencies in or the unconvincing nature of the decision maker's testimony")). Consequently, we find that there is a genuine dispute of material facts that prevent us from entering summary judgment for Defendant. Therefore, Defendant's motion for summary judgment on this claim is **DENIED.**

4) Pendent Jurisdiction

Plaintiff also alleges the violation of Puerto Rico statutory counterparts to Title VII. Due to the fact that substantive law of Puerto Rico on sexual harassment, so far as pertinent here, is aligned with Title VII law as evidenced by the fact that Title VII precedents are used freely in construing Commonwealth law, pursuant to the above discussion, we likewise find for Defendant on Plaintiff's Commonwealth law sex discrimination claims. *Hernandez–Loring v. Univ. Metropolitana,* 233 F.3d 49 (1st Cir. 2000). *See Rodriguez Meléndez v. Supermercado Amigo, Inc.,* 126 D.P.R. 117 (1990). Therefore, Plaintiff's Commonwealth law claims will be **DISMISSED WITH PREJUDICE.**

**SO ORDERED.**