Jerry **CASTLEMAN**, Plaintiff–Appellee,

v.

**ACME BOOT COMPANY,**
Defendant–Appellant.

Nos. 90–3384, 91–2308.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 28, 1991.

Decided April 9, 1992.

---

Paul R. Welch (argued), Dawn L. Wall, Costigan & Wollrab, Bloomington, Ill., for plaintiff-appellee.

Alfred B. LaBarre (argued), Robert G. Heckenkamp, Duane D. Young, Heckenkamp, Simhauser & LaBarre, Springfield, Ill., for defendant-appellant.

Before CUMMINGS and CUDAHY, Circuit Judges, and WISDOM, Senior Circuit Judge.*

CUMMINGS, Circuit Judge.

Plaintiff Jerry Castleman, a former sales representative for defendant Acme Boot Company ("Acme"), filed a four-count complaint against Acme after his employment was terminated on February 9, 1987. At that time he was 51 years old and eight months from becoming eligible for early retirement. Count I was based on the Employee Retirement Income Security Act ("ERISA") (29 U.S.C. § 1140). Count II was brought under the Age Discrimination in Employment Act ("ADEA") (29 U.S.C. § 623). Count III charged that Acme had breached an employment agreement, and Count IV charged that Acme had breached a covenant of good faith and fair dealing.[1]

A jury found Acme liable under Count II, the ADEA claim. In a separate trial to determine damages for the ADEA violation, the jury found that Acme had willfully violated ADEA. After the damages trial, the district court held in favor of Acme on Count I, the ERISA claim. At the same time, the district court denied Acme's motions for judgment notwithstanding the verdict ("JNOV") on the jury's ADEA and willfulness findings. Without elaborating, the judge below stated that "Plaintiff presented evidence in support of his claims and the jury obviously found at least some of Plaintiff's evidence to be credible" (Appellant's App. at 4). The district court therefore entered a judgment of $40,000 for Castleman on the ADEA claim—$20,000 for the violation itself and $20,000 as liquidated damages based on the jury's willfulness verdict. On appeal, Acme contends that there was no evidence to support Castleman's age discrimination claim. Acme also contends that the evidence does not support the jury's finding of willfulness.

I.

Acme hired Castleman in October 1972 as a salesman pursuant to an oral employment contract. Castleman acted as a manufacturer's representative, soliciting orders for Acme boots at various retail outlets in his assigned territory. As compensation, Castleman received a commission on his sales. Although his territory varied over his career, he worked for the most part in the state of Illinois. In October 1982, after working for Acme for ten years, Castleman became entitled to a company pension upon reaching the age of 65. Castleman was terminated in February 1987, at which time he was 51 years old.

Castleman's termination did not affect his pension rights payable at age 65. The termination, however, occurred approximately eight months before Castleman would have become eligible for early retirement at the age of 55 instead of 65. Under Acme's pension plan, this benefit accrued when an employee worked at the company for 15 years. No other person in Castleman's division was near the 15–year mile-

---

* The Honorable John Minor Wisdom, Senior Circuit Judge of the United States Court of Appeals for the Fifth Circuit, is sitting by designation.

1. The district court granted Acme's motion for directed verdict with respect to Counts III and IV at the close of Castleman's evidence. Castleman did not appeal these rulings.

stone at the time of his firing. Three other men in Castleman's division, however, were older than Castleman in February 1987, and four men had more longevity than Castleman. Castleman's immediate supervisor testified that he was unaware of Castleman's exact age and his pension status when he was terminated. Castleman was unable to prove discharge of any other vested employees before they reached the 15–year milestone.

Acme contends that Castleman was terminated because he ranked next to last in sales performance among the salesmen in his eleven-man sales division in 1986 and in January 1987 (considering the two periods separately). Different salesmen were last in 1986 and January 1987; therefore, over these two periods Castleman's record was arguably the worst in his division. While admitting the accuracy of these figures, Castleman disputes their proper interpretation. The salesmen at Acme were judged by comparing the number of pairs of shoes sold in their territory against the number sold in the prior year. This comparison was made even if part of their territory was previously handled by a different salesperson. To support his argument that his supposed poor performance was a pretext for age discrimination, Castleman contends that his sales statistics were not fairly evaluated by the company because he was given additional territory in 1986, with his sales being compared to sales of an established salesman who had handled this territory before him. He also asserts that changes in Acme's credit approval of several of his customers adversely affected his sales performance. As evidence of his strong performance, Castleman further points to two awards he won in the mid–1970s for regional sales performance and customer service, as well as to an award he received in 1984 for selling more than one million dollars worth of boots for ten consecutive years.

## II.

■ The district court's decision to deny Acme's JNOV motions must be reviewed *de novo. Graefenhain v. Pabst Brewing*

*Co.,* 827 F.2d 13, 15 (7th Cir.1987). We therefore evaluate the JNOV motions under the same standard as the district court did. Acme bears a heavy burden: We can conclude that the district judge erred in denying Acme's JNOV motions only if the evidence presented at trial, in conjunction with reasonable inferences drawn from the evidence, could not lead a reasonable jury to find that age was a determining factor in Castleman's firing when viewed in the light most favorable to Castleman. *Holzman v. Jaymar–Ruby, Inc.,* 916 F.2d 1298, 1299 (7th Cir.1990). Castleman's evidence, however, must be substantial; "a mere scintilla of evidence will not suffice." *LaMontagne v. American Convenience Products, Inc.,* 750 F.2d 1405, 1410 (7th Cir.1984).

■ ADEA makes it illegal for an employer to "discharge any individual * * * because of such individual's age." 29 U.S.C. § 623(a)(1). This Court has interpreted "discharge because of age" to mean that the employer would not have discharged the employee if not for the employee's age. *LaMontagne,* 750 F.2d at 1409. Thus it is not necessary that age be the only factor in the discharge; it need only be a "but-for" factor. *Id.* An employer, of course, does not normally memorialize an intention to discriminate on the basis of age. Direct evidence, such as an employer statement that reveals hostility to older workers, is rarely found. Plaintiffs sometimes provide circumstantial evidence such as statistics showing a pattern of discriminatory treatment of older workers. See *Perfetti v. First National Bank of Chicago,* 950 F.2d 449, 450 (7th Cir. 1991). In addition, the Supreme Court has expressly authorized the use of indirect evidence in discrimination cases under a burden-shifting model set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668; see *Tice v. Lampert Yards, Inc.,* 761 F.2d 1210, 1212 (7th Cir.1985) (noting widespread adoption of the *McDonnell Douglas* model in ADEA actions).

■ A plaintiff can establish a prima facie case of age discrimination under this

model if he shows that (1) he is over 40 years old, (2) he was doing his job well enough to meet his employer's legitimate expectations, (3) he was discharged, and (4) the employer sought a replacement. *Overgard v. Cambridge Book Co.*, 858 F.2d 371, 375 (7th Cir.1988). Upon such a showing, the burden of production shifts to the defendant to produce evidence of a legitimate reason for the discharge. The plaintiff, who retains the burden of proof, must show that the defendant's rationale is pretextual, typically by attacking the believability of the proffered rationale. *Graefenhain*, 827 F.2d at 17–18.

■ Once a trial has been conducted, this Court will not decide whether a plaintiff has met her burden of making a prima facie case, or whether a defendant has met the alternate burden of producing evidence of a legitimate rationale for discharge. *Grohs v. Gold Bond Bldg. Products*, 859 F.2d 1283, 1286 (7th Cir.1988), certiorari denied, 490 U.S. 1036, 109 S.Ct. 1934, 104 L.Ed.2d 405. Rather, we review the record as a whole to determine whether substantial evidence of age discrimination supports the verdict. *Perfetti*, 950 F.2d at 450. Our evaluation of the evidence is informed by an awareness of the *McDonnell Douglas* model and the central reason for its existence—the normal inability of a plaintiff to obtain direct evidence of age discrimination.

Besides the mere fact that he was 51 years old when fired, the only other evidence directly bearing on Castleman's age related to his pension. Castleman testified at trial, and it is undisputed, that he was eight months away from his 15–year anniversary with Acme, and that on this anniversary he gained the right to retire at age 55 instead of age 65. Although Castleman did not present any evidence that this right of early retirement would cost Acme money, we believe that this is a reasonable inference the jury could make in the absence of any contrary evidence introduced by Acme.

■ Acme never expressly contends that evidence regarding the timing of Castleman's firing cannot support the verdict of age discrimination because it is not sufficiently related to Castleman's age. This is understandable, since this Circuit has made clear that evidence of discrimination on the basis of economic factors related to age may support a verdict of age discrimination. *Wheeldon v. Monon Corp.*, 946 F.2d 533 (1991); *Jardien v. Winston Network, Inc.*, 888 F.2d 1151 (1989); *Metz v. Transit Mix, Inc.*, 828 F.2d 1202 (1987).[2] The Third Circuit in *White v. Westinghouse Electric Co.*, 862 F.2d 56 (3d Cir.1988), cited *Metz* with approval when confronted with a case similar to the case now before us. White was fired months before his 30–year anniversary with Westinghouse, at which time he would be entitled to slightly greater benefits upon retirement. The Third Circuit reversed summary judgment for Westinghouse, despite Westinghouse's assertion that White was terminated because he had the lowest performance ratings in his department, because "the timing of White's discharge raises a genuine issue of material fact as to whether Westinghouse's proffered reasons for discharging White were merely a pretext for impermissible discrimination." *Id.* at 62. We thus follow the Third Circuit in holding that the evidence of timing in relation to the vesting of pension benefits can be evidence of age discrimination.

■ According to Acme, however, the district court's denial of ERISA liability precludes any jury consideration of the pension plan milestone as probative evidence. After the jury had rendered its verdict, the judge below concluded "that the Plaintiff failed to prove by a preponderance of evidence that he was discharged 'for the purpose of interfering' with his attainment of rights under an employee benefit plan." (Appellant's App. at 3)

---

2. The decision in *Visser v. Packer Engineering Associates, Inc.*, 924 F.2d 655 (7th Cir.1991) (en banc), is not to the contrary. There the overwhelming evidence pointed to the fact that the employee was fired for failure to express complete loyalty to the chief executive of his employer.

(quoting 29 U.S.C. § 1140). This finding by the judge presents somewhat of a conundrum. It is not challenged on cross-appeal by Castleman, so it is final. Yet it seems to discredit evidence relied upon by the jury—and we are supposed to interpret evidence in the light most favorable to the jury's finding.

There is a strong argument that the district court's unchallenged ERISA ruling is incorrect because the judge was bound by the jury's prior age discrimination verdict. When a Title VII case and a Section 1983 case are tried concurrently to a judge and a jury, "the jury's verdict binds the judge with respect to any factual issues common to the jury- and judge-tried claims." *McKnight v. General Motors Corp.*, 908 F.2d 104, 113 (7th Cir.1990), certiorari denied, —— U.S. ——, 111 S.Ct. 1306, 113 L.Ed.2d 241. Since three older salesmen in Castleman's division were not fired, and since Castleman did not present any other evidence of Acme's bias against age, the factual issue in this case under ADEA and ERISA was essentially the same: Did Acme discriminate against Castleman because of his pension status?[3] Castleman does not raise this issue, however, and indeed does not challenge the judge's ERISA holding at all.

Given the circumstances of this case, Acme's argument that this reviewing court cannot consider Castleman's pension status as part of the evidence properly before the jury is without merit. Acme never objected to the evidence below, and the judge's ERISA finding does not retroactively remove evidence from our analysis of the jury's verdict.

■ Rodney Lockerman, Castleman's immediate supervisor, testified at trial that he was not aware when he fired Castleman that Castleman's early retirement benefit was due to vest within eight months. In evidence, however, was a memorandum dated January 20, 1987, from one supervisor, Michael Vogel, to Lockerman listing Castleman and two others as prime candidates for termination. Another supervisor, Joe Edmondson, according to Lockerman's testimony, had circled Castleman's and another's name as the two most likely candidates. Although Vogel and Edmondson did not testify at trial, the memorandum strongly indicates that they played a significant role in Castleman's termination. As Lockerman admitted, these supervisors, higher-level managers than Lockerman, had the opportunity to discover Castleman's retirement status. The evidence of Castleman's pension benefit status was properly before the jury.

The bulk of Castleman's evidence went to prove that Acme's justification for firing him—poor sales performance—was a pretext. If there is substantial probative evidence that it was a pretext, then the jury was free to conclude that a motivating factor for Acme's decision was age discrimination. Castleman must do more, however, than show that Acme was mistaken or unfair in its decision to fire him—the evidence must support a conclusion that Acme "made up" its reason for the discharge. *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557 (7th Cir.1987), certiorari denied, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486. Neither the jury nor this Court is empowered to act as a "super-personnel department" and decide if Acme's firing was unwise or unjustified. *Graefenhain*, 827 F.2d at 20–21.

A jury's conclusion that an employer's reasons were pretextual can be supported by inconsistencies in or the unconvincing nature of the decisionmaker's testimony. See *Perfetti*, 950 F.2d at 456. In this case, the jury verdict in favor of Castleman is supported not only by the timing of Castleman's termination but also by contradictions in Lockerman's testimony. Lockerman insisted that he alone was responsible for firing Castleman. But the memoran-

---

**3.** It is clear that the trial below was conducted with the idea that the two counts were identical. At the directed verdict hearing, Castleman did not distinguish between the ADEA and ERISA claims when he argued that directed verdict was improper under both claims. When the judge denied the directed verdict motion as to these two counts, he stated that "[t]he first two counts are dealing purely with the age aspect." Tr. at 176. Yet later the judge denied the ERISA claim without even discussing the possibly preclusive effect of the jury's finding.

dum described above indicates that Vogel and Edmondson were also significantly involved in the decision. Lockerman denied even that the memorandum pressured him to fire anybody. Lockerman also testified that his decision was based not only on Castleman's sales figures but also on his evaluation of Castleman's travel records. But Lockerman then admitted that he had never complained to Castleman about his travel records. The jury was entitled to rely on these inconsistencies and less than credible assertions when deciding that Acme's proffered rationale for the firing was pretextual.

Lockerman also testified that he never looked into the credit problems raised by Castleman, and that he never looked into the possible effect of territory changes.[4] Lockerman simply maintained that Castleman's sales figures were low and therefore he was fired. When asked about low sales figures of other salesmen, Lockerman offered various reasons explaining their performance. It is certainly permissible for an employer to fire a salesman for poor sales performance. The jury verdict is sustainable in this case, however, where the employee was near gaining a pension benefit and where the supervisor's testimony was contradictory and reflected different treatment of the complaining employee.

It is important to note that this case does not involve a plaintiff fired for an egregious instance of disobedience or gross negligence. For example, in *Kier v. Commercial Union Ins. Cos.*, 808 F.2d 1254 (7th Cir.1987), certiorari denied, 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 528, this Court overturned an ADEA jury verdict in favor of a staff attorney who was fired after refusing to prepare a portion of a training manual in response to a rumor that he had been passed over for a job promotion. The evidence in that case presented by plaintiff could not overcome his willful disobedience in failing to perform a task request (and his poor judgment in responding to an unsubstantiated ru-

mor). Similarly, the court in *Karazanos v. Navistar Int'l Transp. Co.*, 948 F.2d 332 (7th Cir.1991), upheld summary judgment for a defendant in an ADEA case when the plaintiff engineer failed to discover a major defect in one of the machines designed when he was the project engineer.

Since the jurors obviously believed that the poor performance reason was pretextual in view of Castleman's explanation, it is not for us to second-guess them. With the sole defense of poor performance rejected by the jury's credibility assessments, the ADEA judgment must stand.

### III.

■■■ We turn next to the propriety of the jury's willfulness verdict. Acme is guilty of willfully violating ADEA if it knew or showed reckless disregard for the matter of whether its firing of Castleman was prohibited by ADEA. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128–129, 105 S.Ct. 613, 625, 83 L.Ed.2d 523; *Graefenhain*, 827 F.2d at 22. We conclude that there is not sufficient evidence in this case to support the jury's conclusion that Acme willfully violated ADEA.

Our precedents establish that an ADEA plaintiff must present specific evidence that the defendant knew or showed reckless disregard as to whether its conduct violated ADEA to support a willfulness finding. *Holzman*, 916 F.2d at 1305; *Overgard*, 858 F.2d at 377. Castleman points only to a letter in evidence from Lockerman's supervisor to Lockerman indicating that any termination had to be done "legally." This letter does not mention Castleman at all. In addition, the admonition to fire "legally" could refer to maintaining proper pay and benefits, or to contract law considerations. It is true that the jury's implicit finding that Acme's proffered reasons for firing was a pretext supports to some extent its finding of willfulness. See *Burlew v. Eaton Corp.*, 869 F.2d 1063,

---

4. Castleman testified without rebuttal that his territory was expanded in 1986 to cover the Chicago area in addition to his prior territory that included the rest of Illinois and part of Iowa. The jury could reasonably conclude that Castleman could not put the same amount of time into each account with this larger territory.

1069 (7th Cir.1989) (discussing problems of applying willfulness standard when *McDonnell Douglas* burden-shifting is employed). Additional and sufficiently probative evidence of Acme's state of mind, however, is necessary to conclude that a willful violation existed. No evidence in this case indicates that Acme either knew or showed reckless disregard for whether its actions were in violation of ADEA.

### IV.

On May 24, 1991, the district court awarded Castleman $21,379.43 in attorney's fees resulting in appeal No. 91–2308 which was consolidated with the prior appeal on the merits by order of this Court on August 9, 1991. The parties agree that if we affirm the decision of the trial court on the underlying appeal regarding the merits, we should affirm the trial court's decision as to attorney's fees. But since we have reversed the order of the trial court granting $20,000 liquidated damages for willful violation of ADEA, the district court may now consider modifying the amount of its award of attorney's fees. In this Court Castleman has also asked for at least $2,500 attorney's fees for handling the appeal. The district court shall consider the propriety of this request on remand.

For the foregoing reasons, the district court's denial of JNOV on the ADEA verdict is affirmed, the denial of JNOV on the willfulness verdict is reversed, and the case is remanded for further proceedings consistent with this opinion. Each party to bear its own costs.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED.