Linda CHANDLER, Plaintiff,

v.

SENTRY INSURANCE, Defendant.

No. 96–C–0512–C.

United States District Court,
W.D. Wisconsin.

April 29, 1997.

Michael R. Fox, Fox & Fox, S.C., Madison, WI, for Plaintiff.

Brad P. Corbett, Associate Counsel, Sentry Ins., Stevens Point, WI, Janet M. Hedrick and Alice E. Burke, Vedder, Price, Kaufman & Kammholz, Chicago, IL, for Defendant.

CRABB, District Judge.

In this civil action for monetary and injunctive relief, plaintiff Linda Chandler contends that defendant Sentry Insurance terminated her employment because of her sex and age in violation of Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e–2, and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34. This case is before the court on defendant's motion for summary judgment. Defendant contends that plaintiff was terminated because of her undisputed misconduct. Plaintiff argues that defen-

dant's reasons are contradictory and inconsistent and therefore pretextual and that younger male employees were given lesser penalties for similar misconduct.

I conclude that plaintiff has failed to establish that she was discriminated against on the basis of her sex or age. Plaintiff has not established material contradictions in defendant's explanation or shown that similarly situated younger male employees were treated differently and therefore has failed to rebut defendant's proffered reason for terminating her, namely her undisputed violation of company policy. Accordingly, summary judgment will be entered in defendant's favor.

For the purpose of deciding defendant's motion for summary judgment, I find from the parties' proposed findings of fact that there is no genuine dispute with respect to the following material facts.

## UNDISPUTED FACTS

Defendant Sentry Insurance is an insurance company headquartered in Stevens Point, Wisconsin. Defendant employed plaintiff Linda Chandler as a sales representative from 1982 until her discharge on or about July 5, 1994. Plaintiff was 44 years old when she was fired.

Plaintiff worked primarily out of her home in Fond du Lac, Wisconsin, but reported to the Milwaukee office for monthly sales meetings. Plaintiff's immediate supervisor was Milwaukee Sales Manager Kim Foster. Foster managed a sales team including himself, plaintiff and nine other sales representatives, and reported to Dick Ouimet, the Director of Sales for the Wisconsin Division. Tom Skillman was defendant's Human Resources Operations Manager.

Defendant's Sales Representative Manual governed the completion and submission of life insurance applications. It and defendant's life insurance application form required that the agent do the following when taking applications for life insurance: (1) ask the applicant certain medical questions; (2) explain the application and a document titled Important Notice Required by Law to the applicant; (3) secure the applicant's signature on the application and the Important Notice; (4) witness the applicant's signature on the two documents; (5) certify that the agent had asked the questions in the application, witnessed the signatures and given the Important Notice to the applicant; and (6) complete an Agent's Statement that explains the agent's relationship to the applicant and states whether the applicant was present at the time the application was completed. Plaintiff had a copy of the manual and was aware that her signature was part of defendant's contract with the insured.

Mark Kaminskas, the son of plaintiff's husband, Bob Kaminskas, was a college student in Arizona in 1993. Before September 1993, Mark owned an interest sensitive life insurance policy issued by National Mutual Benefit. On September 9, 1993, plaintiff filled out and submitted to defendant an Absolute Assignment form, authorizing the surrender of Mark's National Mutual Benefit policy, and an application for $50,000 of life insurance, naming Mark as the insured and Bob as the beneficiary. The application, Important Notice, and Absolute Assignment were signed by Bob without Mark's knowledge. Plaintiff signed the application and certified that she had followed all of the required procedures. Plaintiff admitted later that her certified statements were false, that she had never spoken with Mark about the policy or witnessed his signatures and that her conduct was contrary to defendant's company policy.

On June 29, 1994, Skillman and Foster received copies of a complaint Mark filed with the Wisconsin Office of the Commissioner of Insurance, in which he stated that plaintiff had caused his National Mutual Benefit policy to be surrendered to defendant without his knowledge or authorization. He requested that defendant reinstate his original policy with National Mutual Benefit along with the interest that would have accrued had the policy remained intact.

On the same day, Foster's assistant, Lynn Pascavis, faxed a copy of the complaint to plaintiff and spoke with her on the telephone. Plaintiff admitted to Pascavis that her husband had signed Mark's signature on the application and other relevant documents. Pascavis communicated this information to

Foster, who passed it on to Skillman. Skillman interviewed plaintiff about the complaint on June 30, 1994. She admitted that Bob had signed the papers and that she had not witnessed the signatures.

In response to Mark's complaint, plaintiff drafted a letter to the Insurance Commissioner in which she stated that she had given the application papers to Bob to secure Marks signature, and that she had no reason to doubt that the signature was Mark's. She claimed that she learned later that Bob had signed Mark's name thinking that he was the owner of the policy and had the right to do so. She also stated that she had overheard a telephone conversation between Bob and Mark about a policy on the life of Bob's nephew, and therefore "had no reason to think that all of this had not been discussed" with Mark. Skillman obtained a copy of plaintiff's letter from Foster.

Skillman concluded that plaintiff had falsely certified both Mark's signature and the fact that she had met with Mark and discussed the policy. He concluded that Mark had no intent to purchase defendant's life insurance policy and no knowledge that it had been done. Skillman decided that plaintiff should be discharged because of her misconduct.[1]

Foster communicated the termination decision to plaintiff on July 2 and Skillman spoke with her about it on July 5, 1994. Plaintiff admitted during both conversations that discipline was warranted for her actions, although she believed that termination was too severe. She alleged that there were other employees who had failed to witness signatures, but refused to name any individuals when asked for specifics.

When Skillman made the decision to terminate plaintiff, he was not aware of any other cases in which he had recommended that a sales representative not be terminated for knowingly falsifying information on an application or submitting an application without the insured's knowledge. On one occasion, as part of one of defendant's sales contests,

Foster asked plaintiff to allow another agent to sign an application she had procured so that the entire sales team would meet the contest goal. No one had disciplined plaintiff for trading applications with other agents. Skillman and Ouimet were unaware of any circumstances in which plaintiff was directed to allow another agent to sign an application that she had obtained.

On occasion, sales representatives have received applications through the mail. In those situations, they could not have witnessed the applicants' signatures. Foster was aware of such cases or similar ones, but did not discipline the agents because the insureds had full knowledge of the transactions. Skillman and Ouimet were not aware of those cases.

## OPINION

A plaintiff may prove discrimination in two different ways. First, she may meet her burden "head on by presenting direct evidence or circumstantial evidence that age was the determining factor" in her discharge, *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1122 (7th Cir.1994) (quoting *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 371 (7th Cir.1992)), or, as is more common, she may apply the indirect, burden-shifting method for Title VII cases established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Collier v. Budd Co.*, 66 F.3d 886, 889 (7th Cir.1995). Plaintiff employs the burden-shifting method in an attempt to prove that age and sex were determining factors in her termination. Because plaintiff does not distinguish between the evidence she offers for her age and sex discrimination claims, they will be treated together for purposes of this opinion.

Under *McDonnell Douglas*, plaintiff must first make out a prima facie case of discrimination *Anderson*, 13 F.3d at 1122. Plaintiff may establish a prima fade case of sex and

---

**1.** The parties agree that the decision to terminate plaintiff was made by Skillman and one other individual, but dispute the identity of the other decisionmaker. Plaintiff contends that it was

Foster, defendant argues that it was Ouimet. The dispute is immaterial to the resolution of this motion for summary judgment.

age discrimination in a termination case by showing that:

> (1) she fell within the protected class of persons (female and age 40 or over); (2) she was meeting her employer's legitimate expectations; (3) she was discharged or subject to some other adverse action by her employer, and (4) a younger male employee was treated more favorably under similar circumstances.

*Rand v. CF Indus., Inc.,* 42 F.3d 1139, 1144 (7th Cir.1994)

Defendant contends that plaintiff cannot establish the fourth element of the prima fade test: that similarly situated employees not within the protected class were treated more favorably. Defendant recognizes that there are numerous formulations of the prima facie analysis, some of which do not require evidence of differential treatment as an element, viewing it instead as evidence of pretext. *Kralman v. Illinois Dept. of Veterans' Affairs,* 23 F.3d 150, 153 n. 2 (7th Cir. 1994). However, defendant argues that the choice of formulation is irrelevant because plaintiff has failed on both accounts: she has not established a genuine issue that similarly situated younger male employees were treated differently or that defendant's reasons for discharging her were pretextual. Plaintiff appears to operate under the assumption that she has made out a prima facie case, and directs all of her arguments to defendant's explanation for its termination decision, with the intent to show that it was pretextual.

The formulation of a prima facie case is not meant to be "rigid, mechanized, or ritualistic." *Smith v. General Scanning, Inc.,* 876 F.2d 1315, 1319 (7th Cir.1989) (citing *United States Postal Service v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983)). In the end, the question whether plaintiff has established the vital elements of a prima facie case is inseparable from plaintiff's attack on defendant's proffered reasons for terminating her. If plaintiff can demonstrate that similarly situated younger male employees were treated differently, then she can go on to establish that defendant's explanation for firing her was dishonest or, at least not the complete truth. Because inevitably there are numerous variations of the

prima facie test given the various types of employment action, *id.,* and the ultimate analysis is unaffected by the exact placement of the pretext argument, I will accept plaintiff's contention that she has shifted the burden to defendant. Therefore, I will consider the evidence regarding contradictions in the record and differential treatment of similarly situated employees as relevant to plaintiff's position that defendant's articulated legitimate reasons for plaintiff's dismissal are pretextual.

■■■ Once the plaintiff establishes a prima facie case, the employer has the burden of articulating a legitimate, non-discriminatory reason for the plaintiff's termination. *Anderson,* 13 F.3d at 1122. If the employer is successful, the burden shifts back to the employee to demonstrate that the reason offered by the employer is a pretext for sex or age discrimination. *Id.* The plaintiff must "produce evidence from which a rational factfinder could infer that the company lied" when stating its reasons for terminating her. *Id.* at 1124 (quoting *Shager v. Upjohn Co.,* 913 F.2d 398, 401 (7th Cir.1990)). Under the indirect method of proving sex and age discrimination, once the employer meets its burden of production by providing a non-discriminatory reason for its action, the plaintiff must produce evidence beyond her own mere assertions to the contrary. *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464–65 (7th Cir. 1986). A plaintiff can show pretext indirectly by demonstrating that (1) defendant's explanation has no basis in fact; (2) the explanation was not the "true" reason; or (3) the reason stated was insufficient to justify dismissal. *Id.* Summary judgment is proper when plaintiff presents no indication of motive or intent that tends to prove impermissible discrimination. *Holland v. Jefferson National Life Ins. Co.,* 883 F.2d 1307, 1312 (7th Cir.1989).

Defendant alleges that plaintiff was terminated because she lied when she certified that she had witnessed Mark's signature on the life insurance application, explained the policy and the Important Notice to him, and asked him the application questions personally. Further, defendant alleges that Skillman and Ouimet made the termination decision

because they believed that Mark had no knowledge of the policy and no intent to purchase it, and that they learned this from Mark's letter to the Insurance Commissioner and Skillman's investigation of the matter.

Plaintiff counters with two related claims: first, that inconsistencies and contradictions in the record create a "suspicion of mendacity" undermining defendant's credibility; and second, that because younger male agents were not terminated under similar circumstances, defendant's reasons are pretextual. "A jury's conclusion that an employer's reasons were pretextual can be supported by inconsistencies in or the unconvincing nature of the decisionmakers testimony." *Castleman v. Acme Boot Co.,* 959 F.2d 1417, 1422 (7th Cir.1992) (citing *Perfetti v. First National Bank of Chicago,* 950 F.2d 449, 456 (7th Cir.1991)). Plaintiff's allegations of defendant's inconsistencies and contradictions revolve around who made the decision to terminate plaintiff and the reasons defendant offered. Therefore, plaintiff's arguments will be addressed in conjunction with her claims of disparate treatment.

In order to show that she was similarly situated to other employees, plaintiff is required to prove that "all of the relevant aspects of her employment were 'nearly identical'" to the comparison group. *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 802 (6th Cir.1994) (citation omitted). "Even if a plaintiff shows different treatment after violations of the same rule, he or she might not succeed in establishing a prima facie case." *Johnson v. Artim Transportation System, Inc.,* 826 F.2d 538, 543 (7th Cir. 1987). Although comparison of identical rules violations may be helpful when considering a prima facie case of discrimination, a court is entitled to compare conduct rather than rule violations in its disparate treatment analysis, especially where it may be more helpful to focus on the nature of the misconduct. *Id.* at 544.

Initially, plaintiff argues that the documentary evidence establishes her claim that it was Skillman and Foster, rather than Skillman and Ouimet, who ultimately decided to terminate her. Plaintiff thinks she must establish that Foster was involved in making the adverse decision; otherwise, her evidence of how Foster treated other rule violations would be irrelevant. (In actuality, it is irrelevant in any event because plaintiff is unable to show that Foster ever had occasion to address misconduct similar to plaintiff's. Nevertheless, I will discuss it.) Plaintiff contends that documents produced by defendant contradict defendant's claims that Foster was not involved in the termination decision. Plaintiff points to a July 6, 1994 memo Skillman placed in Chandler's file that does not mention that Ouimet was involved in the termination decision, and, in a phrase following a description of a conversation with Foster, states that "we have concluded that Linda certified she witnessed signatures which she in fact did not witness." Plaintiff concludes that "we" refers to Skillman and Foster. Plaintiff also argues that in defendant's response to the Equal Rights Division, it stated that Skillman and Foster terminated plaintiff and made no reference to Ouimet.

Neither piece of evidence contradicts defendant's position. The meaning of "we" in the memo is ambiguous and does not clearly refer to Foster, so it does not create a contradiction. The Equal Rights Division letter does not purport to have anything to do with the decision making process but merely relates to the act of communicating the termination decision to plaintiff. Therefore, the reference in the letter is accurate: Foster did call plaintiff to fire her. Furthermore, the absence of Ouimet's name from memos and letters can hardly be called contradictory or inconsistent. Plaintiff has attempted to make these minor omissions and ambiguities evidence of intentional misstatements and omissions, but the evidence is too slight to bear the weight she attaches to it. Because plaintiff has not set forth any apparent or relevant inconsistencies or contradictions, her claims do not reach a level sufficient to support a finding of pretext.

Plaintiff goes on to present evidence that in order to ensure that all the members of a sales team qualified for one of defendant's sales contests, Foster asked plaintiff to allow another agent to sign for an application she

had obtained. Foster did not fire the agent for failing to witness the applicant's signature. Further, plaintiff claims that it was common knowledge that some applications had been received through the mail, and that Foster had not disciplined the agents who signed the applications despite the fact that they could not have witnessed the signatures.

The misconduct plaintiff characterizes as similar differs in significant respects from her own misconduct. Plaintiff's failure to witness the applicant's signature was only one aspect of her indiscretion. Plaintiff failed to speak to the applicant; the applicant opposed the transfer; and he filed a formal complaint with the Wisconsin Insurance Commissioner. Plaintiff has not shown that any of these factors was present in the examples offered by plaintiff. Although plaintiff attempts to limit the factors to her specific rule violation (her failure to witness the applicant's signature), defendant was entitled to consider all of plaintiff's actions as well as the consequences of her behavior when it terminated her. Consideration of the misconduct, and not just the rule violation, was relevant to defendant's determination. *See Id.*

Plaintiff does not dispute the facts that she never spoke with Mark about the application and that Mark opposed the transfer she instigated. These circumstances distinguish her situation from the misconduct she alleges Foster knew about and treated differently. Because plaintiff cannot point to any situations in which Foster treated similarly situated younger male employees more favorably, it makes no difference whether he or Ouimet participated in the decision to terminate her.

Plaintiff argues that if Ouimet was involved in the termination decision, he was aware of a male sales representative who had forged a signature on a policyholders' check at the insured's direction and was given only a written reprimand. Plaintiff contends that this agent's infraction was at least as serious as hers, but she fails to properly establish these facts as supported by the record. Even if she had, she can hardly claim that the situation is analogous to her own. Unlike the agent who was directed by the policyholder to sign her check, plaintiff was not authorized by the policyholder to take any of the actions she took. Plaintiff has not adduced evidence of any situation in which an agent took actions contrary to the wishes of the insured. She has no evidence that Skillman, Ouimet or Foster was aware of previous instances in which agents had taken actions as harmful to defendant as plaintiff's.

Finally, plaintiff contends that it is significant that it was not until after she was terminated that she discovered that Mark had not signed his application and did not want the transfer to occur. Plaintiff points to Skillman's memo and plaintiff's termination letter, which she claims do not refer to Mark's lack of knowledge and desire for the transfer, as further evidence that Skillman did not really consider this a relevant factor when making his decision. She argues that her lack of knowledge of these facts and Skillman's allegedly contradictory memo and letter show that they could not have been part of the decision to fire her, and thereby establish evidence of pretext.

■ Once again, plaintiff neglects to support her contentions properly with evidence in the record, and again, her contentions fail. Skillman was not required to believe plaintiff's claims that she was unaware of both the fraud and Mark's intentions, especially in light of the evidence he had to the contrary. Furthermore, Skillman's memo does refer to Mark's ignorance of the transaction. Even if it did not, the fact that Skillman did not specifically include all of his conclusions in a memo or termination letter does not contradict his proffered reasons for firing plaintiff. Defendant concluded from Skillman's investigation that plaintiff had violated company policy intentionally and that Mark had had no knowledge of the transfer and no intent to undertake it. Defendant's conclusions are supported by the evidence, which includes Mark's letter to the Insurance Commissioner. "[T]he issue of pretext does not address the correctness or desirability of reasons offered for employment decisions," but is concerned with whether the employer honestly believed in the reasons it offers. *McCoy*, 957 F.2d at 373.

█ Even assuming that plaintiff established a prima facie case of age or sex discrimination, she has failed to rebut defendant's legitimate reasons for her termination, namely her violations of company policy and the applicant's opposition to the policy transfer. *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1414 (7th Cir. 1984) (evidence of pretext must specifically address employer's proffered reason for discharge). There is simply no support for plaintiff's contention that her age or sex entered into defendant's decision to fire her. Plaintiff has not adduced evidence of contradictions in defendant's explanation or evidence that any other employee who instigated transfers contrary to the wishes of the policyholder was not terminated. No "rational factfinder could infer that the company lied" when it said it terminated plaintiff for her misconduct. *Anderson*, 13 F.3d at 1124.

## ORDER

IT IS ORDERED that the motion for summary judgment of defendant Sentry Insurance is GRANTED. The clerk of court is directed to enter judgment for defendant and dose this case.