Anton J. ANDREN, Plaintiff,

v.

GENERAL FIBERGLASS SUPPLY, INC., Larry Moore, and Jeffery Held, Defendants.

No. CIV. A. 96–C–1012.

United States District Court, E.D. Wisconsin.

Oct. 9, 1997.

David A. Axelrod, Schoenberg, Fisher & Newman, Chicago, IL, for Plaintiff.

James C. Reiher, von Briesen, Purtell & Roper, Milwaukee, WI, for Defendants.

## DECISION AND ORDER DENYING IN PART AND GRANTING IN PART THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

REYNOLDS, District Judge.

Plaintiff Anton J. Andren ("Andren") was formerly employed by defendant General Fiberglass Supply, Inc. ("GFS"), as a sales representative. Defendants Larry Moore ("Moore") and Jeffery Held ("Held") are officers of GFS. Following his termination by GFS, Andren sued GFS for age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and sued Moore and Held (collectively "individual defendants") for tortious inference with a business relationship.

Before the court is the defendants' motion for summary judgment on all claims. Because Andren has submitted sufficient facts to create a jury question of whether GFS's explanations for his termination are pretextual for age discrimination, the motion is denied as to this claim. However, because Held and Moore were acting in the perceived interests of GFS in causing Andren's termination, and because state equal employment law provides the exclusive state remedy for discrimination, Held and Moore are entitled to summary judgment on the tortious interference claim and are dismissed from the case.

## SUMMARY JUDGMENT STANDARD

The court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions, and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of asserting the absence of any dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Material facts are those facts which, under the governing substantive law, "might affect the outcome of the suit." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

To avoid summary judgment, however, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Even if some facts are in dispute, entry of summary judgment is in order if the movant either establishes uncontroverted facts entitling it to summary judgment or demonstrates that the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

To determine whether material facts are disputed so as to preclude the entry of summary judgment, the court relies on the parties' proposed findings of fact. *See generally* Local Rule 6.05 (E.D.Wis.). The moving party must submit detailed factual propositions in accordance with Local Rule 6.05(a). The nonmoving party, must specifically respond to movant's proposed findings; if findings are disputed, evidentiary support for the dispute must be cited. Local Rule 6.05(b)(1).

A responding party may also submit additional factual propositions. Local Rule 6.05(b)(2). When there is no objection to proposed findings of fact, the court accepts them as true. Local Rule 6.05(d).

At its core, this is the stage of the litigation in which the parties are required to demonstrate that they have sufficient relevant evidence to offer to allow a jury to apply the law and find in their favor. Finally, it should be noted that, in the context of an employment discrimination case, it is important to employ the summary judgment standard with renewed rigor due to the unique importance of the issues of credibility and intent. *Courtney v. Biosound*, 42 F.3d 414, 419 (7th Cir.1994).

## FACTUAL BACKGROUND

Andren, an Illinois resident, was born on June 29, 1934. Defendants Moore and Held (collectively "individual defendants") own all of GFS's outstanding shares of stock and hold positions as officers with the corporation. GFS distributes equipment and supplies used by the fiberglass-reinforced plastic and cultured marble industries. GFS employed Andren from 1976 until December 1, 1995, as a sales representative.

While GFS claims a long history of concern with Andren's job-performance, Andren claims that the first inkling he received of problems with his work was on December 1, 1995, when he was terminated. The individual defendants personally made the decision to terminate Andren's employment. In skirmishing over the cause of Andren's termination, the parties have submitted detailed facts and figures. For the purpose of this suit, they can be distilled into a basic dispute. GFS claims that this decision was based on sales records, input by Andren's direct supervisors, input by several of GFS suppliers and customers, and a 1994 market survey of Andren's sales area. These bases are fleshed out in detailed assertions of Andren's failings and GFS's documentation thereof going back as far as 1990.

*In seriatim*, Andren attacks these alleged bases of his termination as either untruths, irrelevancies, or facts manufactured post-hoc to justify the termination. Further, Andren claims that fluctuations in his performance were the result of GFS's decisions with regard to pricing, defining sales areas, and product handling. The disputes over supervisor, customer, and supplier input regarding Andren's performance amount to a swearing contest. This contest is complicated by evidentiary concerns such as hearsay and, more importantly, by the need to measure the relevance of events that may have taken place years before Andren's termination.

In addition to Andren's attack on GFS's appraisal of his skills, Andren disputes many of the facts that GFS claims make up a long history of evaluating and critiquing Andren prior to its terminating him on December 1, 1995. Where GFS asserts that many events that occurred in the employment relation between 1990 and 1995 came to pass because of Andren's alleged deficiencies—deficiencies it claims Andren was made aware of—Andren claims that he was given entirely different explanations at the time the events took place. Andren's supervisors testify to a series of meetings with Andren over the years in which they communicated with Andren about his deficiencies. Andren either disputes these meetings took place or disputes that the subject matter of these meetings included any criticisms of his performance. Andren has notes in which he documented the content of some of these meetings.

The record is further muddied by an underwhelming paper trail of GFS's alleged evaluations and criticisms. The few employee evaluations in evidence do not alone support the long-term failings GFS attributes to Andren. The documentation that does exist is rendered ambiguous by the parties' explanations. For example, Andren's pay was reduced in 1991. GFS claims this pay cut was a result of poor performance. Andren claims he was told the company had to tighten its belt and that many employees, including members of management, were bearing the burden of a pay-cut. A "status/payroll change report," dated January 4, 1991, indicates a pay-cut of $3500 "to be repaid as a bonus if 1991 sales forecast is met." (Jan. 31, 1997 Van Harpen Aff., Ex. 25.) In fact, Andren received $2500 as a bonus that year. The following year, his full salary was rein-

stated. In 1993, Andren received a "merit increase" of $1000 in his salary. Also before the court is Held's supplemental affidavit in which he downplays the importance of sales forecasts as a useful evaluative tool. (Apr. 11, 1997 Held Supp. Aff. ¶ 3.) Finally, Andren's sales for 1994, the year before his termination, amounted to 104% of his forecasted sales.

Andren has also submitted evidence of what he claims is a pattern of age discrimination in GFS's sales force. Specifically, the statistics purport to show that, in the period after Held became the president of GFS's Distribution Division, the average age of GFS's sales force sunk by approximately ten years. Further, the statistics purport to show the separation of older employees from GFS and the hiring of younger recruits in their stead.

GFS correctly points out that these statistics were not subjected to a multiple regression analysis and therefore do not purport to account for the varied reasons employees may have voluntarily left or been terminated by GFS, including possible nondiscriminatory reasons. GFS further responds with expert opinion that the sample size, the 12–14 member sales force, and methodology of evaluation utilized by Andren's statistics, render the statistics void of probative value. As detailed below, the court declines to assign these statistics the prominence urged by Andren nor ignore them as urged by GFS. GFS's reply papers attacking the statistics illustrate that significant factual and expert disputes will need resolution before these statistics can be assigned a probative value. However, this resolution is not necessary for the purposes of this motion.[1]

### DISCUSSION

### I. AGE DISCRIMINATION

The fundamental problem that arises in discrimination litigation has shadowed An-

glo–American law for ages: Who knows what evil lurks in the hearts of men? The ADEA prohibits adverse employment actions taken "because of [the employee's] age." 29 U.S.C. § 623(a). Thus it becomes necessary to determine the reason an employer made a particular decision. The difficulty in this is that under our law, most employees may be fired without any reason whatsoever. The presence, however, of an impermissible reason in the mind of the employer is a violation of the law.

As in any civil litigation, an ADEA plaintiff may proffer direct evidence of the assertion to be proved, here discriminatory intent. However, most employers are sophisticated enough not to create direct evidence of this impermissible synaptic event. *See Castleman v. Acme Boot Co.*, 959 F.2d 1417, 1420 (7th Cir.1992). That is, most employers who wish to fire an employee because of the employee's advanced years are clever enough to refrain from declaring "you are fired because you are old."

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court recognized that the law cannot restrict relief to those victims of discrimination lucky enough to have been discriminated against by employers so careless as to evidence their own discriminatory intent. Thus was born a juridical framework by which a fact-finder may rationally be permitted to infer discrimination, circumstantially, from an employer's actions.

Of the two routes to victory, direct and circumstantial, Andren purports to satisfy both. The court, however, finds no direct evidence that age was a determining factor in GFS's decision to fire Andren, and proceeds to analyze this case under the *McDonnell Douglas* burden-shifting model. Under this model, Andren creates a dispute of material fact over whether GFS's concerns with his

---

1. Andren has moved to strike two affidavits. The Freeman affidavit is that of GFS's statistician. The Hovan affidavit is that of a GFS employee who apparently worked at one of GFS's competitors in a position that informed him of the competitor's success in sections of Andren's sales territory. The court is loath to ignore potentially relevant facts. However, because these affidavits were unnecessary to the disposition of the defendants' motion for summary judgment, it was unnecessary to permit a reply to these affidavits by Andren. Andren's motions to strike are denied.

performance were a pretext for discrimination.

### A. *The Direct Method and Statistical Proof*

"Direct evidence" is evidence that, if taken as true, permits a reasonable finder of fact to find a second assertion to be true "without reliance upon inference or presumption." *Plair v. E.J. Brach and Sons. Inc.*, 105 F.3d 343, 347 (1997). As proof of discriminatory intent, Andren's statistics do not approach this threshold. In order to find such intent from the statistics, it would be necessary to infer the absence of legitimate explanations for any trend in the age of GFS's sale's force.[2] While the statistics may have a role to play in this case, they are insufficient as direct evidence, and unnecessary as circumstantial evidence in the prima facie case within the *McDonnell Douglas* burden-shifting model.

### B. *Circumstantial Evidence*

■ While the development of the law has given rise to an army of rules and aphorisms that now attend the *McDonnell Douglas* analysis, the purpose of the prima facie case is merely to require some evidence of discrimination and permit the employer to proffer nondiscriminatory explanations therefor. If the employer cannot give legitimate reasons for the appearance of discrimination, or the reasons are disbelieved, both rationality and the law permit, but do not require, a jury to infer that the employer discriminated. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). In short, this is an "If-you-did-nothing-wrong,-what-are-you-hiding?" analysis, controlled for fairness to all parties by shifts in the burden of proof at points where human experience allows a fact-finder to infer the truth of an assertion.

First, a plaintiff must establish a prima facie case, the purpose of which is to show that the complained of employment decision "did not result from the two most common legitimate reasons on which an employer might rely ... an absolute or relative lack of qualifications or the absence of a vacancy in the job sought."[3] *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 n. 44, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977). The most common version of the prima facie case involves a showing that 1) the plaintiff belongs to a protected class, 2) the plaintiff was qualified for the position, 3) the plaintiff suffered an adverse employment action, and 4) the employer replaced the plaintiff with someone from outside the protected class. *McDonnell–Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824 (1973). The last element merely requires some indicium of discrimination. The version laid out in this decision is merely the most typical means of raising such a presumption. *See Leffel v. Valley Fin. Servs.*, 113 F.3d 787 (7th Cir. 1997) (*explaining O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996)).

After establishing a prima facie case, a rebuttable presumption of discrimination arises, requiring an employer to come forward with a legitimate nondiscriminatory reason for its actions. Once such a reason is offered, the presumption of discrimination dissolves. *Fuka v. Thomson Consumer Elec.*, 82 F.3d 1397 (7th Cir.1996). A plaintiff is then permitted to try and prove that the reason an employer has offered is a lie, a pretext for some other reason. *Russell v. Acme–Evans Co.*, 51 F.3d 64, 67 (7th Cir. 1995). If the plaintiff succeeds in proving that an employer's proffered reason is a lie, a jury may infer that the employer has discriminated in violation of the law. *Id.*

#### 1. *The Prima Facie Case*

In this case, GFS concedes Andren has met all but the second element—that he was qualified for the job. Thus, GFS raises Andren's qualifications as both an attack on the prima facie case and as a legitimate, nondis-

---

**2.** This, in fact, is the precise reason most statistical proof of discrimination involves multiple regression which attempts to account for legitimate, nondiscriminatory variables.

**3.** This accounts for why Andren's statistics do not, in themselves, establish a prima facie case. The statistics do not purport to account for the most common, nondiscriminatory reasons for an adverse employment action and therefore do not fulfill the purpose of the prima facie case.

criminatory explanation for his dismissal. This creates an analytical problem.

The law allows an employer to determine what qualifies an employee for a particular job—with certain exceptions including age, race, and sex-based qualifications. *See generally Greenslade v. Chicago Sun–Times. Inc.,* 112 F.3d 853, 865 (7th Cir.1997). At the same time, a discrimination plaintiff must establish a prima facie case in order to be entitled to a trial by jury. Under GFS's argument, an employer could unilaterally block discrimination suits by challenging an employee's qualifications at the prima facie stage of litigation. Further, permitting this type of attack to succeed would destroy the *McDonnell Douglas* framework by collapsing a jury's analysis of an offered legitimate, nondiscriminatory reason into a court's evaluation of the prima facie case.

This problem explains why the precise elements of a prima facie case are questions of law to be tailored to the needs of the particular lawsuit. *See Loyd v. Phillips Bros. Inc.,* 25 F.3d 518, 522–23 (7th Cir.1994). Under the facts of this case, to require Andren to establish as part of his prima facie case that he was qualified for the position would be to apply *McDonnell Douglas* with a rigidity such as would undermine the purpose of the analysis it established: "The prima facie case never was meant to be applied in rote fashion, which is why in discharge cases some of our opinions require evidence that the employer sought a replacement for the plaintiff ... while others do not." *Brill v. Lante Corp.,* 119 F.3d 1266 (7th Cir.1997) (citations omitted). At the summary judgment stage, whether a plaintiff has established a prima facie case is a question for the court. Resolving Andren's qualifications, in view of his long employment history and the hotly disputed details of his performance would charge this court with a degree of fact-finding and credibility-weighing most appropriately left to a jury.

As discussed above, the prima facie case requires a plaintiff to account for the most common reasons for an adverse employment action. Thus, in a failure-to-hire case, it is clear why a plaintiff needs to make a prima facie showing of qualification, lest a cause of action arise every time an employer chooses one applicant over another. Here, however, GFS employed Andren for almost twenty years, during the bulk of which he apparently performed well. It is not so clear that flagging performance after almost twenty years of successful employment is one of the "two most common" reasons for dismissal. *Cf. International Bhd. of Teamsters,* 431 U.S. at 358 n. 44, 97 S.Ct. at 1866 n. 44 (1977).

Finally, in the next stage of the *McDonnell Douglas* analysis, in which an employer may proffer a legitimate, nondiscriminatory explanation for an employment action, GFS will be provided ample opportunity to litigate its claim that Andren became unqualified. Mechanically applying the requirements of the prima facie case would hopelessly intertwine the distinct stages of the analysis, further undermining *McDonnell Douglas*'s burden shifting approach. *See Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120, 1125 n. 4 (7th Cir.1994) (reserving analysis of plaintiff's qualifications for the pretext stage of the litigation). In the case at bar, the court holds that the facts that Andren, a member of the protected class, was replaced with a younger worker, after years of service, the bulk of which was satisfactory, establishes a prima facie case of age discrimination.[4] The facts create a tentative presumption that age played a determining role in GFS's determination to fire Andren.

### 2. *GFS's Legitimate, Nondiscriminatory Reason*

Though the prima facie case attempts to account for the most common reasons for an adverse employment action, an employer may take such an action for an uncommon, even bizarre reason without violating the law. Therefore, once a prima facie case is established, the burden shifts to the defendants to enunciate a legitimate, nondiscriminatory reason their actions. *Rabinovitz v. Pena,* 89 F.3d 482, 487 (7th Cir.1996). GFS's assertions and evidence that Andren's perfor-

---

**4.** A more formalized observance of McDonnell–Douglas norms would contemplate Andren's years of successful service for GFS as itself satisfying the "qualifications" element of the prima facie case.

mance was flagging easily satisfy this burden.

### 3. *Pretext*

■ Finally, Andren is permitted to try and prove that GFS's concern with his performance is merely a pretext for discrimination. That is, the burden shifts back to Andren to prove that GFS is lying when it claims to have fired him because of concerns with his past performance. *See Russell v. Acme–Evans Co.*, 51 F.3d 64 (7th Cir.1995). The most common means of demonstrating pretext are showing that a defendant's explanation had no basis in fact, that the explanation was not the "real" reason, or that the reason stated was insufficient to warrant making the employment decision at issue. *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir.1996).

### a. *Andren's Defense of His Work*

Andren attempts to demonstrate that, in fact, his performance did not falter. For example, GFS submits the affidavits of several customers attesting to problems with Andren's customer relations skills. In response, Andren submits affidavits from several different customers taking the opposite view. This strategy must fail. GFS is entitled to determine that a complaint from one customer out of one hundred constitutes poor customer relations. *Essex v. United Parcel Service. Inc.*, 111 F.3d 1304, 1310 (7th Cir. 1997) ( "In examining pretext, the question is whether the employer honestly believed its proffered reason for discharge.... The fact that the employer was mistaken or based its decision on bad policy, or even just plain stupidity, goes nowhere as evidence that the proffered explanation is pretextual"). Andren's attack here merely takes issue with GFS's management evaluations, a generally ineffective means of showing pretext.

The same fate befalls Andren's attempts to explain his sales figures by reference to a fiberglass shortage, changes in his territory, and allegedly poor management decisions. Offered as an attack on the factual basis on which GFS purports to have relied in its termination decision, these assertions only really call into question GFS's ability to comprehend the forces at work in shifting markets. An employee will often fail when he attempts to explain his own alleged failings as having resulted from poor management decisions. *Schultz v. Gen. Elec. Capital Corp.*, 37 F.3d 329 (7th Cir.1994). This is because such attempts usually end up merely questioning the business judgment of an employer. Showing a business mistake does not in itself show pretext, *Russell v. Acme–Evans Co.*, 51 F.3d 64 (7th Cir.1995), unless the circumstances are so outlandish as to create the inference that the decision could not, in fact, have been a mistake in business judgment.

### b. *Andren's History of Criticism, Discipline, and Warnings*

Andren manages to create a dispute of material fact, however, when he contests the specific facts of what GFS asserts is a long history critiquing, warning, and disciplining Andren. Where GFS details a series of discussions and meetings that allegedly took place over a period of years, Andren is successful in evidencing a genuine dispute that a number of the discussions or meetings ever took place or that the contents thereof were what GFS asserts them to be. In particular, GFS alleged a number of meetings between a succession of Andren's superiors and Andren in which he was told of problems and complaints with his performance and often issued warnings to improve. (*See* Defs.' Prop. Facts 13–15, 21, 22, 25, 29 and the responses thereto.) Further, GFS offers reasons for certain events in the employment relation, e.g., Andren's 1991 pay cut, transfers of certain of Andren's accounts, and alterations of Andren's territory. These reasons all support GFS's claim that Andren's work was deficient. Andren provides evidence that GFS had offered completely different explanations at the time. (*See* Defs.' Proposed Facts 14, 15, 23 and the responses thereto.)

The fact that a good deal of Andren's evidence on this score is exclusively his own testimony raises an issue for trial, not summary judgment. Though an employee's claims of adequate performance are usually

insufficient to create a genuine dispute over pretext,[5] the employee-plaintiff is a perfectly competent witness as to a defendant's factual assertions. *Mills v. First Fed. Sav. & Loan Ass'n,* 83 F.3d 833, 845 (7th Cir.1996). Here, GFS claims to have terminated Andren based on a history of working with him to improve allegedly under-par performance. Andren has submitted sufficient admissible evidence that, taken as true, would allow a jury to infer that GFS's explanations are a post-hoc construct to cover-up for discrimination.

Andren is not required to show that GFS's asserted reasoning is not true; he is required to show that it is not the actual reasoning underlying his termination. *Emmel v. Coca–Cola Bottling Company,* 95 F.3d 627 (7th Cir.1996). Even if GFS's criticisms of Andren's work are correct, Andren has raised a triable question as to whether these criticisms were the reasons for his termination to the exclusion of his age. If a jury finds that, in fact, GFS gave one reason at the time of making an employment decision, and another reason during litigation, or that GFS is being dishonest about the lengthy history of critiquing and warning Andren, the jury would be entitled to infer that GFS's explanation for Andren's termination is a pretext for discrimination. *Id.; Perfetti v. First Nat. Bank of Chicago,* 950 F.2d 449 (7th Cir.1991). Andren must be given the opportunity to have this dispute resolved by a jury; therefore, summary judgment on Andren's ADEA claim is denied.

## II. TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP

In count two of his complaint, a state law claim, Andren alleges that Held and Moore tortiously interfered with his business relationship with GFS. The parties skirmish over whether the law of Wisconsin, the state in which GFS is incorporated and headquartered and of which the individual defendants are residents, or Illinois, where Andren lives and worked, applies. However, the result is the same under either states' law: Held and Moore are entitled to summary judgment on the tortious inference claim.

The second count of the complaint alleges that Held and Moore tortiously interfered with Andren's employment by GFS. Somewhat anomalously, it alleges that this interference "was solely as a result of Andren's income and age." (Compl.¶ 20.) For the sake of thoroughness, the court will address each "sole" ground.

■ Insofar as Andren alleges that age motivated the alleged interference, this claim is barred by both Wisconsin's Fair Employment Act, § 111.31 et seq., and Illinois' Human Rights Act, Ch. 775, Act. 5. These statutes provide the exclusive state remedies for employment discrimination claims. *Heinritz v. Lawrence Univ.,* 194 Wis.2d 606, 535 N.W.2d 81 (Ct.App.1995); *Anderson v. Pistner,* 148 Ill.App.3d 616, 102 Ill.Dec. 9, 499 N.E.2d 566 (1986),

■ Insofar as Andren claims that his income, as a senior sales representative, motivated the alleged inference with his employment, Moore and Held are privileged in the actions they took. In allegedly causing Andren's termination because of his level of pay, Held and Moore would have garnered nothing for themselves, while GFS would, in theory, save money on a newer employee. A corporate officer is privileged to act in the perceived interests of the corporation. *Wilcox v. Niagara of Wisconsin Paper Corp.,* 965 F.2d 355 (7th Cir.1992). Because neither Moore's nor Held's private interests would have been served by the termination of a highly paid employee, they cannot be held personally liable for tortious interference and these defendants are entitled to summary judgment. *See Girsberger v. Kresz,* 261 Ill. App.3d 398, 198 Ill.Dec. 940, 633 N.E.2d 781 (1993).

*See Russell v. Acme–Evans Co.,* 51 F.3d 64, 68 (7th Cir.1995).

---

5. This is not an absolute or freestanding principle. It flows from evidentiary concerns with hearsay and the declarant's personal knowledge.

## III. ANDREN'S DISCOVERY MOTION

On March 5, 1997, Andren moved this court for an order compelling responses to discovery aimed at Held and Moore's finances. The foundation of this motion was the relevance of the individual defendant's finances to the issue of punitive damages sought in the tortious interference claim. The discovery motion was stayed pending the resolution of the defendants' summary judgment motion. Having determined that Held and Moore are entitled to summary judgment on the tortious interference claim, the issue of punitive damages drops from the case, and therefore Andren is not entitled to the discovery sought in his March 5, 1997 motion.

## CONCLUSION

The defendant General Fiberglass Supply's motion for summary judgment on the plaintiff Anton J. Andren's age discrimination claim is **DENIED.**

The defendants Larry Moore and Jeffery Held's motion for summary judgment on plaintiff Anton J. Andren's intentional interference with employment claim is **GRANTED.** The defendants Larry Moore and Jeffery Held are **DISMISSED** from this action.

Plaintiff Anton J. Andren's motions to strike the Hovan and Freeman affidavits are **DENIED.**

Plaintiff Anton J. Andren's motion to compel is **DENIED.**

The scheduling clerk shall notice a telephonic scheduling conference regarding this action.